**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MASSIMO MAZZACCONE, individually and
on behalf of all others similarly situated,

        Plaintiff,

       v.

THE BOLIVARIAN REPUBLIC OF
VENEZUELA,

        Defendant.

Civil Case No. 1:24-cv-06168-DLC

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION, APPOINTMENT OF PLAINTIFF AS CLASS REPRESENTATIVE,
AND APPOINTMENT OF DUANE MORRIS AS CLASS COUNSEL**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................... 1

I.      STATEMENT OF FACTS ................................................................................. 3

    A.      Plaintiff Seeks to Certify Two Classes of Alleged Beneficial Owners of
        Venezuelan Sovereign Debt. ................................................................ 3

    B.      Because of the Maduro Regime's Oppressive and Antidemocratic
        Conduct, the United States Recognizes the National Assembly as the Only
        Legitimate Government of Venezuela ..................................................... 3

    C.      United States Sanctions Broadly Prohibit Transactions With the Maduro
        Regime or its Affiliates. ...................................................................... 5

    D.      The National Assembly Has Tolled the Statute of Limitations on the
        Bonds. ............................................................................................... 6

    E.      Plaintiff Acquired the Bonds So He Could Bring This Lawsuit. ............ 6

II.     LEGAL STANDARD ....................................................................................... 8

III.    ARGUMENT ................................................................................................... 9

    A.      Plaintiff Does Not Demonstrate by a Preponderance of the Evidence That
        Class Certification is Warranted. .......................................................... 9

    B.      Plaintiff Is Subject to the Unique Defense of Champerty and Therefore Is
        Not a Typical or Adequate Representative of the Proposed Classes .......... 10

        1.      New York's Champerty Statute Prohibits Acquiring Debt for the
            Purpose of Bringing Litigation. ................................................ 11

        2.      Plaintiff Acquired the Bonds in Order to Bring this Lawsuit ........... 11

        3.      The Champerty Defense Threatens to Become the Focus of the
            Litigation ............................................................................. 13

    C.      Plaintiff Cannot Satisfy the Standards for Class Certification Under Rule
        23(b)(3). ........................................................................................... 14

        1.      Individual Issues Will Predominate If the Proposed Classes are
            Certified. .............................................................................. 14

            a.      Ensuring Compliance with Sanctions Against the Maduro
                Regime and its Affiliates Will Be an Individualized Issue. .......... 15

            b.      Tracing and Proving Ownership Will Be Individualized
                Issues. ................................................................................. 16

(1)   *There is No Administratively Feasible Method to Identify the Class.* .................................................. 16

(2)   *This Individualized Inquiry Will Overshadow Common Questions.* ........................................... 17

(3)   *United States Sanctions Prohibit CAPA From Accessing the Republic's Records Regarding the Bonds.* ....................................................... 18

c.   Damages Will Be an Individualized Issue. ................... 19

d.   Affirmative Defenses Will Be an Individualized Issue. ................ 19

2.   A Class Action Is Not Superior to Individual Actions. ............................ 20

a.   Individual Actions are Feasible and Many Have Already Been Filed. ...................................................... 20

b.   The Proposed Classes are Unmanageable. .................................... 22

c.   Tolling Does Not Support a Finding of Superiority. ..................... 22

D.   Proposed Class Counsel is Inadequate Under Rule 23(g). ................................. 24

1.   Proposed Class Counsel Failed to Disclose and Seek Approval of a Fee-sharing, Co-counsel Relationship. ...................................................... 24

2.   Plaintiff's Deficient Self-Collection In This Litigation Raises Concerns Regarding Whether Counsel Will Protect the Interests of Class Members. ........................................................ 26

IV.   CONCLUSION ................................................................................ 28

## TABLE OF AUTHORITIES

**Cases**

*1964 Realty LLC v. Consulate of the State of Qatar-New York,*
No. 14-CI-6429-ER, 2015 WL 5197327 (S.D.N.Y. Sept. 4, 2015) ......................................... 23

*Am. Exp. Co. v. Italian Colors Rest.,*
570 U.S. 228 (2013)............................................................................................................. 8

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 615 (1997)........................................................................................................... 13

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
222 F.3d 52 (2d Cir. 2000) ............................................................................................... 10

*Bowling v. Johnson & Johnson,*
No. 17-CV-3982-AJN, 2019 WL 1760162 (S.D.N.Y. Apr. 22, 2019) ..................... 10

*Caballero v. Fuerzas Armadas Revolucionarias de Columbia,*
No. 20-MC-40-LJV, 2021 WL 1884110 (W.D.N.Y. May 11, 2021)....................... 23

*CIBC Bank & Tr. Co. (Cayman) v. Banco Cent. do Brasil,*
886 F. Supp. 1105 (S.D.N.Y. 1995) ...............................................................................11, 13

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013)......................................................................................................... 8, 13

*Decastro v. City of New York,*
No. 16-CV-3850-RA, 2019 WL 4509027 (S.D.N.Y. Sept. 19, 2019)....................... 19

*Diverse Partners, LP v. AgriBank, FCB*
No. 16-CV-9526-VEC, 2019 WL 4305008 (S.D.N.Y. Sept 11, 2019) ............... 17, 18

*Dover v. Brit. Airways, PLC (UK),*
321 F.R.D. 49 (E.D.N.Y. 2017)........................................................................................ 22

*Garcia De León v. New York Univ.,*
No. 21-CV-05005-CM, 2022 WL 2237452 (S.D.N.Y. June 22, 2022).................... 25

*Grullon v. Lewis,*
No. 24-CV-04892-VEC-SN, 2025 WL 1693425 (S.D.N.Y. June 17, 2025)............ 27

*Herman v. City of New York,*
334 F.R.D. 377 (E.D.N.Y. 2020)..................................................................................... 27

*Huang v. Shanghai City Corp,*
No. 19-CV-7702-LJL, 2022 WL 1468450 (S.D.N.Y. May 10, 2022)..................... 24

*Huer Huang v. Shanghai City Corp.,*
459 F. Supp. 3d 580 (S.D.N.Y. 2020) ........................................................................ 26

*In re Allergan PLC Sec. Litig.,*
No. 18-CV-12089-CM-GWG, 2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020) ........ 25

*In re Foreign Exch. Benchmark Rates Antitrust Litig.,*
407 F. Supp. 3d 422 (S.D.N.Y. 2019) ....................................................................... 22

*In re Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006), *decision clarified on denial of reh'g sub nom. In re Initial
  Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007) ................................................. 8

*In re Petrobras Secs.*,
  862 F.3d 250 (2d Cir. 2017) ........................................................................... 13, 15

*Jimenez v. Palacios*,
  250 A.3d 814 (Del. Ch. 2019) ................................................................................. 23

*Justinian Cap. SPC v. WestLB AG*,
  28 N.Y.3d 160 (2016) ............................................................................................ 10

*Kalish v. Karp & Kalamotousakis, LLP*,
  246 F.R.D. 461 (S.D.N.Y. 2007) ............................................................................ 24

*Kingsepp v. Wesleyan Univ.*,
  142 F.R.D. 597 (S.D.N.Y. 1992) .............................................................................. 9

*Kiobel v. Royal Dutch Petroleum Co.*,
  No. 02-CV-7618-KMW-HBP, 2004 WL 5719589 (S.D.N.Y. Mar. 31, 2004) ........................ 14

*Kovalev v. A.G. Consulting Eng'g, P.C.*,
  No. 22-CV-5954-MKV, 2025 WL 2444156 (S.D.N.Y. Aug. 25, 2025) .................................... 9

*Kulig v. Midland Funding, LLC*,
  No. 13-CV-4175-PKC, 2014 WL 5017817 (S.D.N.Y. Sept. 26, 2014) ................................... 27

*Landry v. Price Waterhouse Chartered Accts.*,
  123 F.R.D. 474 (S.D.N.Y. 1989) ............................................................................. 13

*Lateral Recovery LLC v. Funderz.net, LLC*,
  No. 22-CV-2170-LJL, 2024 WL 4350369 (S.D.N.Y. Sept. 27, 2024) ................................... 12

*Lindsey v. Normet*
  405 U.S. 56 (1972) ................................................................................................. 19

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008) ................................................................................... 19

*Metcalf v. TranspPerfect Translations Int'l Inc.*,
  No. 19-CV-10104-ER, 2024 WL 1208975 (S.D.N.Y. Mar. 21, 2024) .................................. 10

*Moses v. McDivitt*,
  88 N.Y. 62 (1882) .................................................................................................. 10

*Mullaney v. Delta Air Lines, Inc.*,
  258 F.R.D. 274 (S.D.N.Y. 2009) ............................................................................. 13

*Nnebe v. Daus*,
  No. 06-CV-4991-RJS, 2022 WL 615039 (S.D.N.Y. Mar. 1, 2022) ........................................ 9

*Oscar v. BMW of N. Am., LLC*,
  274 F.R.D. 498 (S.D.N.Y. 2011) ....................................................................... 10, 13

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
   612 F. Supp. 3d 263 (S.D.N.Y. 2020), *aff'd sub nom. Phoenix Light SF DAC v. U.S.*
   *Bank Nat'l Ass'n*, No. 20-1312-CV, 2021 WL 4515256 (2d Cir. Oct. 4, 2021) ........................11

*Romero v. Flaum Appetizing Corp.*,
   No. 07-CV-7222-BSJ-JCF, 2011 WL 812157 (S.D.N.Y. Mar. 1, 2011) .................................. 13

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*,
   324 F. Supp. 3d 387 (S.D.N.Y. 2018) ............................................................................. 21

*Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*,
   No. 14-CV-09764-KPF-SN, 2018 WL 739580 (S.D.N.Y. Jan. 10, 2018) ............................... 18

*Syracuse Mountains Corp. v. Petroleos de Venezuela S.A.*,
   No. 21-CV-2684-VEC, 2024 WL 3637997 (S.D.N.Y. Aug. 1, 2024) ................................ 12, 19

*Themis Cap., LLC v. Democratic Republic of Congo*,
   35 F. Supp. 3d 457 (S.D.N.Y. 2014), *aff'd in part, rev'd in part and remanded*,
   626 F. App'x 346 (2d Cir. 2015) ................................................................................... 23

*Traver v. Lowe's Home Centers, Inc.*,
   No. 12-CV-3528-SLT-VVP, 2014 WL 12825659 (E.D.N.Y. June 27, 2014), *report and*
   *recommendation adopted sub nom. Traver v. Lowe's Home Centers, LLC*, No. 12-CV-
   3528-AMD-PK, 2016 WL 880169 (E.D.N.Y. Mar. 1, 2016)................................................. 14

*Vincent v. Money Store*,
   304 F.R.D. 446 (S.D.N.Y. 2015) ................................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)................................................................................................. 8, 19

*Weiner v. Snapple Beverage Corp.*,
   No. 07-CV-8742-DLC, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)...................................... 19

**Statutes**

28 U.S.C. § 2072(b) ...................................................................................................... 19

N.Y. Jud. Law § 489...................................................................................................... 10, 19

**Other Authorities**

Alfredo Meza, Stefano Pozzebon, and Abel Alvarado, *US Says Maduro Lost Venezuela*
   *Election as Opposition Leader Says She's in Hiding*, CNN (August 2, 2024),
   https://www.cnn.com/2024/08/01/americas/venezuela-election-opposition-machado-
   hiding-intl-latam ...................................................................................................... 12

David J. Fernandez et al., *Demystifying DTC: The Depository Trust Company and the*
   *Municipal Bond Market*, National Association of Bond Lawyers (March 2017),
   available at https://www.nabl.org/wp-content/uploads/2023/02/20170331-NABL-
   Demystifying-DTC.pdf................................................................................................. 16

Executive Order 13884, 84 Fed. Reg. 38843 (Aug. 7, 2019) ........................................................ 4

Javier El-Hage and Robert González, *Letter to Christiane Amanpour Regarding Conflict*
   *of Interest Involving Juan González*, Human Rights Foundation (Nov. 19, 2025),

available at https://www.scribd.com/document/951524881/HRF-Amanpour-Letter-on-Juan-Gonzalez .......................................................................................................... 15

Michael R. Pompeo, *Recognition of Juan Guaido as Venezuela's Interim President*, State Department of the United States (January 23, 2019), https://2017-2021.state.gov/recognition-of-juan-guaido-as-venezuelas-interim-president/ ........................... 4

Office of Foreign Assets Control,
General License No. 31B (Aug. 24, 2022). ................................................................. 5

Press Release, Dep't of the Treasury's Off. of Foreign Assets Control, Treasury Sanctions Venezuelan Officials Supporting Nicolas Maduro's Repression and Illegitimate Claim to Power (Jan. 10, 2025), https://home.treasury.gov/news/press-releases/jy2778 ................. 4, 5

Statement of Interest of the United States of America. *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 1:19-cv-10023, ECF No. 393 (S.D.N.Y. filed Aug. 29, 2025) ................................................................................................................ 4

Statement, Andrea M. Gacki, Director, Off. of Foreign Assets Control, General License No. 31B: Certain Transactions Involving the IV Venezuelan National Assembly and Certain Other Persons (Jan. 9, 2023), https://ofac.treasury.gov/system/files/126/venezuela_gl31b.pdf ................................. 5

*Venezuela Election: Opposition 'Supermajority' Confirmed*, BBC (Dec. 9, 2015), https://www.bbc.com/news/world-latin-america-35043945 ...................................... 3

*Venezuela: A Democratic Crisis,* U.S. Dep't of State: Bureau of W. Hemisphere Affs., https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/#crisis (last visited Nov. 24, 2025) .................................................................................................. 4

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................*Passim*

Defendant the Bolivarian Republic of Venezuela ("Defendant" or "the Republic") respectfully submits this memorandum of law in opposition to Plaintiff Massimo Mazzaccone's ("Plaintiff" or "Mr. Mazzaccone") Motion for Class Certification, Appointment of Plaintiff as Class Representative, and Appointment of Duane Morris LLP as Class Counsel (the "Motion").

## PRELIMINARY STATEMENT

Plaintiff's Motion falls far short of meeting the stringent requirements for class certification imposed by Federal Rule of Civil Procedure 23. Despite generalized and conclusory statements that this case meets Rule 23's requirements, Plaintiff does not support his assertions with sufficient evidence, as the law requires, or even with a fulsome explanation. While the paltry nature of Plaintiff's submission in itself justifies a denial of the Motion, there are various other reasons why class certification is inappropriate.

*First,* Plaintiff is not a typical or adequate representative of the proposed classes, as required by Rule 23(a)(3), because he is subject to a unique defense. Plaintiff purchased the Bonds (defined in Section I.A, *infra*) for the purpose of bringing this action and therefore violated New York's statutory prohibition on champerty. The champerty defense, which deprives Plaintiff of standing to bring this action, threatens to become the focus of the litigation, overshadowing those issues that would be common to other class members.

*Second,* Plaintiff cannot show that common questions of fact or law predominate over individualized issues, as required by Rule 23(b)(3). In particular, the broad sanctions targeting the dictatorship of Nicolás Maduro in Venezuela, and the possibility that sanctioned Maduro affiliates holding the Bonds would seek to participate in a class action, present individualized requirements to ensure no sanctioned individual or entity benefits from this proceeding.

In addition, individualized issues predominate because there is no reliable, administratively feasible method through which class membership can be determined. The Bonds have been issued

1

under a single ISIN/CUSIP number, are held by a clearing agency, the Depository Trust Corporation ("DTC"), and are registered in the name of DTC's nominee—not in the names of beneficial owners. Further complicating the analysis, the Republic's documents concerning the Bonds are unavailable in this case. The Republic is represented here by the Consejo de Administración y Protección de Activos de la República (the Committee for the Administration and Protection of Assets, "CAPA"), which was appointed by the democratically-elected government of Venezuela that is recognized by the United States. United States sanctions prohibit CAPA from accessing, or even requesting, information concerning the Bonds in the possession of the Maduro government.

*Third,* a class action is not superior to all other actions, as required by Rule 23(b)(3). Not only would individualized issues make the class action unmanageable, at least 12 individual actions have already been filed in this District and in New York State Court concerning the Bonds, including one by the Plaintiff himself, showing that putative class members have a strong interest in controlling the prosecution of their claims.

Plaintiff's assertion that a class action is superior because it is necessary to toll the statute of limitations on the Bonds is unfounded. The United States-recognized government of Venezuela has tolled the statute of limitations for these Bonds until December 31, 2028 (the "Tolling Resolution"). The vague uncertainty Plaintiff's expert expresses concerning enforceability of the Tolling Resolution under Venezuelan law is both incorrect (as demonstrated by Defendant's expert) and irrelevant. Under *New York law*, which governs the Bonds, the National Assembly unquestionably has (at the very least) the apparent authority to bind the Republic on statute of limitations issues.

*Finally*, the Court should deny Plaintiff's application to appoint class counsel. Duane Morris's failure to disclose and seek the Court's approval of a fee-sharing, co-counsel relationship is disqualifying, and Plaintiff's apparent self-collection of documents with minimal involvement from counsel raises concerns about whether Duane Morris will fairly and adequately represent the proposed classes.

## I.    STATEMENT OF FACTS

### A.    Plaintiff Seeks to Certify Two Classes of Alleged Beneficial Owners of Venezuelan Sovereign Debt.

Plaintiff seeks to certify two classes of alleged beneficial owners of two series of Venezuelan sovereign bonds:

- 13.625% bonds designated as ISIN No. USP922646AT10 ($752,811,000 principal amount) issued pursuant to the Fiscal Agency Agreement dated August 6, 1998, as amended (the "AT10 Bonds"), and

- 13.625% bonds designated as ISIN No. USP9395PAA95 ($300,000,000 principal amount) issued pursuant to the Fiscal Agency Agreement dated July 25, 2001, as amended (the "AA95 Bonds," and together with the AT10 Bonds, the "Bonds").[1]

Plaintiff alleges that the Republic failed to make contractually mandated payments of principal and interest on these Bonds.[2]

### B.    Because of the Maduro Regime's Oppressive and Antidemocratic Conduct, the United States Recognizes the National Assembly as the Only Legitimate Government of Venezuela.

Venezuela has for years experienced a political crisis in which the democratically-elected government—the only government recognized by the United States—operates in exile.[3] The

---

[1] Dkt. 21 ¶¶ 2-3, 5.
[2] *Id.* at ¶¶ 1-4
[3] *See* Declaration of Camilo Cardozo ("Cardozo Decl.") Ex. 13.

Maduro regime, which came into power in 2013, has been responsible for destroying Venezuela's economy, exploiting the assets of state-owned industries, and committing serious human rights violations.[4] In December 2015, the Venezuelan people overwhelmingly voted in favor of opposition control of Venezuela's legislature, the National Assembly.[5] However, Maduro refused to recognize the National Assembly's authority, and in 2018, manipulated the electoral process (including through disenfranchisement, improper tabulation of election results, and bans on opposition candidates) and declared victory in an election that was widely condemned as fraudulent.[6]

After the 2018 election, the National Assembly declared Maduro's presidency illegitimate and appointed Juan Guaidó as the Interim President in January 2019.[7] The United States recognized that interim government shortly thereafter.[8] The National Assembly also enacted the Statute Governing the Transition to Democracy to Restore the Validity of the Constitution of the Bolivarian Republic of Venezuela (the "Transition Statute") to restore constitutional order and to establish an framework for a transition government while democracy is being restored.[9]

In January 2023, the National Assembly dissolved the interim government and, through an amendment to the Transition Statute, established CAPA to manage and protect Venezuela's assets

---

[4] *See* Cardozo Decl. Ex. 24.
[5] *Venezuela Election: Opposition 'Supermajority' Confirmed*, BBC (Dec. 9, 2015), https://www.bbc.com/news/world-latin-america-35043945.
[6] *See Venezuela: A Democratic Crisis,* U.S. Dep't of State: Bureau of W. Hemisphere Affs., https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/#crisis [hereinafter *Democratic Crisis*]; Press Release, Dep't of the Treasury's Off. of Foreign Assets Control, Treasury Sanctions Venezuelan Officials Supporting Nicolas Maduro's Repression and Illegitimate Claim to Power (Jan. 10, 2025), https://home.treasury.gov/news/press-releases/jy2778 [hereinafter Treasury Sanctions].
[7] *See Democratic Crisis.*
[8] *See* Michael R. Pompeo, *Recognition of Juan Guaido as Venezuela's Interim President*, State Department of the United States (Jan. 23, 2019), https://2017-2021.state.gov/recognition-of-juan-guaido-as-venezuelas-interim-president/.
[9] *See* Declaration of Gustavo Marcano ("Marcano Decl.") ¶ 4.

abroad.[10]  Since January 2023, the United States has recognized the National Assembly as the only remaining democratic institution in Venezuela and has recently reaffirmed this recognition.[11]

The Maduro regime continues to supress the will of the Venezuelan people.  In 2024, an overwhelming majority of Venezuelans voted in favor of an opposition candidate, Edmundo González Urrutia.[12]  Despite the actual election results, Maduro falsely declared himself the winner of the presidency. [13]

**C.    United States Sanctions Broadly Prohibit Transactions With the Maduro Regime or its Affiliates.**

In 2019, the United States government expanded pre-existing sanctions against the Maduro government, as well as affiliated individuals and entities.[14]  Under these sanctions, it is illegal for United States-persons to transact business with, provide support or services for, deal in the property of, or act directly or indirectly for the benefit of the "Government of Venezuela" without a license from the Office of Foreign Assets Control ("OFAC").[15]  The "Government of Venezuela" is defined to include "any person owned or controlled, directly or indirectly," by the Government of Venezuela and "any person who has acted or purported to act directly or indirectly for or on behalf of" Venezuela or its affiliates, "including as a member of the Maduro regime."[16]  The European Union and Canada have imposed similarly broad sanctions on the Maduro regime.[17]

---

[10] Cardozo Decl. Ex. 13; Marcano Decl. ¶ 5.

[11] *See* Cardozo Decl. Ex. 24 at 2; Statement of Interest of the United States of America. *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 1:19-cv-10023-KPF, ECF No. 393 (S.D.N.Y. filed Aug. 29, 2025).

[12] *See* Cardozo Decl. Ex. 24 at 1.

[13] *See* Cardozo Decl. Ex. 24 at 1-2.

[14] *See* Cardozo Decl. Ex. 24 at 2; Executive Order 13884, 84 Fed. Reg. 38843 (Aug. 7, 2019), https://www.federalregister.gov/documents/2019/08/07/2019-17052/blocking-property-of-the-government-of-venezuela [hereinafter Executive Order 13884].

[15] Executive Order 13884.

[16] *Id.*

[17] Treasury Sanctions.

In January 2023, OFAC issued General License No. 31B, which authorized United States persons to engage in all transactions with the National Assembly and any entity established by it, or under its direction, while reiterating the government's prohibition against transactions with the Maduro regime.[18]

**D.    The National Assembly Has Tolled the Statute of Limitations on the Bonds.**

As the statutes of limitations on potential claims by Venezuela's creditors began to run, the National Assembly faced the prospect of expending significant resources on legal defense costs. The likely outcome of such litigation would be not only to draw down the country's already strained resources but also to hamper the potential orderly restructuring of the country's debt and impede future access to international financing, thereby diminishing the recovery of the very bondholders who were compelled to sue to prevent extinction of their claims.[19]

Accordingly, in August 2023, the National Assembly issued the Tolling Resolution to extend the statute of limitations applicable to bonds issued by Venezuela and related enforcement actions until December 31, 2028.[20]  Pursuant to the Tolling Resolution, CAPA has worked with dozens of creditor institutions to terminate litigation proceedings involving billions of dollars in debt without prejudice to reinstating the creditors' claims on or before December 31, 2028.[21]

**E.    Plaintiff Acquired the Bonds So He Could Bring This Lawsuit.**

In July 2024, Plaintiff orchestrated the purchase of the Bonds, which had allegedly been in default since 2018.[22]  At the time, Plaintiff had already commenced three lawsuits in connection with previous purchases of Venezuelan bonds and was familiar with these debt securities and the

---

[18] Statement, Andrea M. Gacki, Director, Off. of Foreign Assets Control, General License No. 31B: Certain Transactions Involving the IV Venezuelan National Assembly and Certain Other Persons (Jan. 9, 2023), https://ofac.treasury.gov/system/files/126/venezuela_gl31b.pdf.

[19] *See* Dkt. 36-2 at 3.

[20] *Id.* at 4.

[21] *E.g.*, Dkt. 33 at 8 n.6, 14-15.

[22] Dkt. 34 ¶¶ 14-15.

Republic's defaults on principal and interest payments.[23]  Plaintiff had also been frequenting online "chat rooms" where he observed discussions of potential enforcement actions amongst investors in various Venezuela debt securities.[24]

According to Plaintiff, at some point, "[i]t became evident . . . from the viewpoint of investors in Venezuela sovereign securities," that the statute of limitations for various debt issuances would soon expire.[25]  With respect to the Bonds, the purported deadline to commence litigation was on or around August 15, 2024.[26]  Faced with this perceived deadline, Plaintiff "decided to acquire some of those [Bonds]" and went through great lengths to do so in order to file this lawsuit before limitations purportedly ran.[27]

Plaintiff admits that market purchases of Venezuelan sovereign debt were prohibited in his home country of Italy.[28]  To circumvent this restriction, Plaintiff enlisted Luca Giovannini, a friend residing in Switzerland, to purchase the Bonds and then to immediately sell the Bonds to Plaintiff.[29]  On July 18, 2024, Plaintiff wired Mr. Giovannini $7,000 to initiate the purchase of $10,000 principal amount in three separate classes of bonds, two of which are the Bonds at issue here.[30]  At his deposition, Plaintiff admitted that the amount paid, to be divided evenly amongst the three classes of bonds, was an estimate untethered to any analysis; he did not know the actual market value of the Bonds and simply trusted any unused amount would eventually be returned.[31]

---

[23] *Id.* at ¶¶ 9-12; *see Arpesella et al. v. Bolivarian Republic of Venezuela*, No. 1:23-cv-08929-JAV (S.D.N.Y. filed Oct. 11, 2023) (individual suit); *Martinez et al. v. Petroleos de Venezuela*, S.A., No. 1:23-cv-08923-JMF (S.D.N.Y. filed Oct. 11, 2023) (individual suit); *Mazzaccone v. Corporación Eléctrica Nacional S.A.*, No. 1:24-cv-02681-JHR (S.D.N.Y. filed Apr. 9, 2024) (proposed class action).
[24] Dkt. 34 ¶ 10; Cardozo Decl. Ex. 1 at 46:12-48:18, 49:5-50:6.
[25] Dkt. 34 ¶ 13.
[26] *Id.* at ¶ 14.
[27] *Id.*
[28] *Id.* at ¶¶ 2, 15; Cardozo Decl. Ex. 1 at 89:20-90:19.
[29] Dkt. 34 ¶¶ 14-15; Cardozo Decl. Ex. 4, Ex. 1 at 90:20-91:15, 92:6-93:8, 94:4-13.
[30] Cardozo Decl. Ex. 2. The third issuance of bonds is the subject of another proposed class action: *Mazzaccone v. Bolivarian Republic of Venezuela*, No. 1:24-cv-9114-LGS (S.D.N.Y.).
[31] Cardozo Decl. Ex. 1 at 94:17-96:15, 97:4-102:2.

The next day, Plaintiff himself drafted an agreement to document the sale, and Giovannini signed it without comment.[32]  Plaintiff explained that this agreement was created solely to ensure the banks involved would have no issues processing the transaction.[33]

In the following weeks, Plaintiff contacted Mr. Giovannini and his bank, Fineco Bank, about the transfer to his account.[34]  On August 8, 2024, Plaintiff acquired the Bonds and asked Fineco Bank "to have the securities valued by August 13, or at least provide certification attesting to my ownership, as the deadline for blocking the statute of limitations on unpaid previous coupons expires on the 14th."[35]  Plaintiff pressed Fineco Bank for the documentation through August 14, 2024—the day this lawsuit was filed.[36]  Plaintiff has admitted that he purchased the Bonds to "strengthen the legal and investment position of all investors by stopping the running of limitations on an issuance-wide basis,"[37] and that the "goal" of this lawsuit "was to extend the statute of limitations period" for himself and other investors.[38]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). To warrant class certification, Plaintiff bears the burden to show by a preponderance of the evidence that the proposed classes satisfy all of the prerequisites listed in Rule 23(a):  (1) they are so numerous that joinder is impracticable, (2) there are questions of law and fact common to the proposed classes, (3) Plaintiff's claims or defenses are typical of the proposed classes, and (4) Plaintiff will fairly and adequately represent the proposed classes.  Fed. R. Civ. P. 23(a);

---

[32] Cardozo Decl. Exs. 3-4, Ex. 1 at 92:6-94:13.
[33] Cardozo Decl. Exs. 3-4, Ex. 1 at 92:6-94:13, 102:15-24,103:8-104:19.
[34] Cardozo Decl. Ex. 3, Exs. 5-8.
[35] Cardozo Decl. Ex. 5 at 0018-19, Ex. 1 at 108:22-109:19.
[36] Cardozo Decl. Ex. 5 at 0020, Exs. 7-8.
[37] Dkt. 34 ¶ 14.
[38] Cardozo Decl. Ex. 1 at 52:2-8.

*Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). In addition, because Plaintiff proceeds under Rule 23(b), he must also show that common questions predominate over individual questions, and that a class action is superior to other available methods. Fed. R. Civ. P. 23(b)(3); *Comcast*, 569 U.S. at 33.

The class certification requirements are more than a "mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiff must "affirmatively demonstrate" compliance with the Rule, *id.*, "through evidentiary proof," *Comcast*, 569 U.S. at 33. *See also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006), *decision clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007) (a court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met"). The Court may certify a class only if it is satisfied after a "rigorous analysis" that Rule 23's requirements are met. *Comcast*, 569 U.S. at 33.

## III.    ARGUMENT

### A.    Plaintiff Does Not Demonstrate by a Preponderance of the Evidence That Class Certification is Warranted.

Plaintiff's Motion does little more than recite the elements of Rule 23 and provide conclusory assertions that the requirements are met. For example, aside from his self-serving declaration, Plaintiff has not even attempted to demonstrate through other evidence that Plaintiff is a member of the proposed classes he seeks to represent (as required to show adequacy and typicality). Similarly, Plaintiff has submitted no evidence showing that (i) all bondholders are subject to the same contractual terms and have been injured by Defendant in the same course of events (as Plaintiff argues is relevant to commonality, typicality, and predominance), or (ii) potential class members would be inhibited from pursuing individual claims and concentrating litigation in this forum simplifies the litigation process (as Plaintiff argues is relevant to

superiority).  Plaintiff's failure to submit evidentiary proof supporting each requirement of Rule 23 requires denial of the Motion.  *Kovalev v. A.G. Consulting Eng'g, P.C.*, No. 22-CV-5954-MKV, 2025 WL 2444156, at *6 (S.D.N.Y. Aug. 25, 2025) (generalized and conclusory declarations are insufficient to prove compliance with Rule 23); *Nnebe v. Daus*, No. 06-CV-4991-RJS, 2022 WL 615039, at *5 (S.D.N.Y. Mar. 1, 2022) (noting a "paltry submission in support of class certification would support the denial of th[e] motion on that basis alone").[39]

### B.  Plaintiff Is Subject to the Unique Defense of Champerty and Therefore Is Not a Typical or Adequate Representative of the Proposed Classes.

Beyond the Motion's general deficiencies, class certification should be denied because Plaintiff is not a typical or adequate representative.  Rather, he is subject to a unique defense:  his purchase of the Bonds violated New York's prohibition on champerty.[40]  Under Rule 23(a)(3), "[t]ypicality is absent where the named plaintiff[] [is] 'subject to unique defenses which threaten to become the focus of the litigation.'"  *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 508 (S.D.N.Y. 2011) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)).  A potential defense threatens to become the focus of the litigation when it goes to "the heart of [the] [p]laintiff's case" and will "require considerable time and effort to rebut."  *See Vincent v. Money Store*, 304 F.R.D. 446, 455 (S.D.N.Y. 2015).  The Court "does not need [to] resolve whether a unique defense would ultimately succeed on the merits."  *Metcalf v. TransPerfect Translations Int'l Inc.*, No. 19-CV-10104-ER, 2024 WL 1208975, at *9 (S.D.N.Y. Mar. 21, 2024).  "[R]ather[,] 'certification must be refused if the Court is confronted with a

---

[39] Conclusory briefing may also render proposed class counsel inadequate, as it reflects a "fail[ure] in the initial stages of th[e] litigation [to] adequately . . . represent the interests of the putative class members." *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 602-03 (S.D.N.Y. 1992).
[40] The significance of a unique defense is generally analyzed under either the typicality or adequacy prongs. *Bowling v. Johnson & Johnson*, No. 17-CV-3982-AJN, 2019 WL 1760162, at *4 (S.D.N.Y. Apr. 22, 2019).

sufficiently clear showing of the defense's applicability to the representative plaintiff.'" *Id.* at *9

(quoting *Baffa*, 222 F.3d at 59).

### 1.    New York's Champerty Statute Prohibits Acquiring Debt for the Purpose of Bringing Litigation.

New York's prohibition on champerty is codified in New York Judiciary Law § 489.

*Justinian Cap. SPC v. WestLB AG*, 28 N.Y.3d 160, 166 (2016). "Section 489(1) restricts

individuals . . . from purchasing or taking an assignment of notes or other securities 'with the intent

and for the purpose of bringing an action or proceeding thereon.'" *Id.* (quoting N.Y. Judiciary

Law § 489(1)). "'To constitute the offense [of champerty] the *primary purpose* of the purchase

must be to enable [one] to bring a suit, and the intent to bring a suit must not be merely incidental

and contingent.'" *Id.* at 166-67 (alterations and emphasis in original) (quoting *Moses v. McDivitt*,

88 N.Y. 62, 65 (1882)). When a lawsuit is "the very essence" of the acquisition, the acquisition is

void. *See Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 281 (S.D.N.Y.

2020, *aff'd sub nom. Phoenix Light SF DAC v. U.S. Bank Nat'l Ass'n*, No. 20-1312-CV, 2021 WL

4515256 (2d Cir. Oct. 4, 2021).

### 2.    Plaintiff Acquired the Bonds in Order to Bring this Lawsuit

Plaintiff concedes he acquired the Bonds to "stop[] the running of limitation periods on an

issuance-wide basis"—in other words, to file this lawsuit.[41]  The circumstances surrounding his

acquisition confirm this.  Plaintiff acquired the Bonds between July 18 and August 8, 2024,

immediately before he believed limitations would expire.[42]  Because he could not legally acquire

the Bonds in Italy, Plaintiff had a friend in Switzerland buy the Bonds for him and then pleaded

with his bank "to have the securities valued by August 13, or at least provide certification attesting

---

[41] Dkt. 34 ¶ 14.
[42] *See supra* Section I.E.

to [his] ownership, as the deadline for blocking the statute of limitations on unpaid previous coupons expires on the 14th."[43]  *See CIBC Bank & Tr. Co. (Cayman) v. Banco Cent. do Brasil*, 886 F. Supp. 1105, 1111 (S.D.N.Y. 1995) (timing of a filing of a lawsuit can raise an inference of champerty).

Although Plaintiff's declaration states that the Bonds were acquired, in part, to "expand [his] portfolio" and "to take advantage of positive developments in the political situation,"[44] such explanations do not withstand scrutiny.  When asked about portfolio expansion at his deposition, Plaintiff could not explain what this meant.[45]  In fact, when Plaintiff purchased the Bonds, he knew that they were already in default, and he had already brought litigation on the AA95 Bonds (*Arpesella et al. v. Bolivarian Republic of Venezuela*).[46]  He also paid a flat amount for the Bonds that was not calculated with reference to their financial value.[47]  These facts negate an inference that Plaintiff acquired the Bonds to grow an investment.

With respect to Plaintiff's vague reference to political developments, Plaintiff explained that he acquired the Bonds because he was "bet[ting]" on a "recogniz[ed] election by the US" that might benefit Venezuela bondholders by "open[ing] the road for a . . . structuring [*sic*]" and "the removal of . . . sanctions."[48]  But Plaintiff was still anxious to finalize the acquisition on August 8, 2024—after the 2024 Venezuelan elections had been held (on July 28, 2024), Maduro had declared victory, and the United States had condemned Maduro's declaration as an "undemocratic

---

[43] *See id.*
[44] Dkt. 34 ¶ 14.
[45] *See* Cardozo Decl. Ex. 1 at 85:14-87:2.
[46] *See supra* Section I.E.
[47] *See id.*
[48] Cardozo Decl. Ex. 1 at 85:14-87:13.

attempt to repress political participation and retain power" in light of evidence that more votes had been cast in favor of the opposition candidate.[49]

Thus, the evidence shows that Plaintiff was not acting as a bona fide investor when he acquired the Bonds; he was litigant seeking to purchase a cause of action. *Syracuse Mountains Corp. v. Petroleos de Venezuela S.A.*, No. 21-CV-2684-VEC, 2024 WL 3637997, at *5 (S.D.N.Y. Aug. 1, 2024) (noting with respect to a champerty claim that "[a]ctions speak even louder than words"). As such, the acquisition is void and Plaintiff lacks standing to sue. *See Lateral Recovery LLC v. Funderz.net, LLC*, No. 22-CV-2170-LJL, 2024 WL 4350369, at *22 (S.D.N.Y. Sept. 27, 2024).

### 3.    The Champerty Defense Threatens to Become the Focus of the Litigation.

The champerty defense threatens to become the focus of this litigation. Because this defense deprives Plaintiff of standing to sue, it would be a complete defense that goes to the heart of Plaintiff's claims. *Oscar*, 274 F.R.D. at 508 (noting the unique defense rule applies where a "full defense" is available). In addition, attempting to rebut the fact-specific champerty defense— which turns on Plaintiff's motives for acquiring the Bonds—would require substantial time and effort. *See CIBC Bank*, 886 F. Supp. at 1111 (champerty determination is "a decidedly fact-specific inquiry"); *Landry v. Price Waterhouse Chartered Accts.*, 123 F.R.D. 474, 475–77 (S.D.N.Y. 1989) (unique defenses, the ultimate success of which "[was] of no matter," rendered plaintiffs atypical and inadequate because they would "divert attention away from the plaintiffs' basic claim"); *Romero v. Flaum Appetizing Corp.*, No. 07-CV-7222-BSJ-JCF, 2011 WL 812157, at *3 (S.D.N.Y. Mar. 1, 2011) (unique defenses threatened to become the focus of the litigation

---

[49] *See supra* Section I.E; Alfredo Meza, Stefano Pozzebon, and Abel Alvarado, *US Says Maduro Lost Venezuela Election as Opposition Leader Says She's in Hiding*, CNN (Aug. 2, 2024), https://www.cnn.com/2024/08/01/americas/venezuela-election-opposition-machado-hiding-intl-latam.

because they would "almost certainly require fact-intensive inquiries"). Accordingly, Plaintiff is not a typical or adequate class representative and class certification should be denied.

**C.    Plaintiff Cannot Satisfy the Standards for Class Certification Under Rule 23(b)(3).**

**1.    Individual Issues Will Predominate If the Proposed Classes are Certified.**

The predominance analysis requires the Court "to take a 'close look' at whether common questions predominate over individualized ones." *Comcast*, 569 U.S. at 34 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). The predominance requirement is "far more demanding than the Rule 23(a) requirement that common questions of law or fact exist." *Mullaney v. Delta Air Lines, Inc.*, 258 F.R.D. 274, 278 (S.D.N.Y. 2009). The requirement "is more qualitative than quantitative, and must account for the nature and significance of the material common and individual issues in the case." *In re Petrobras Secs.*, 862 F.3d 250, 271 (2d Cir. 2017) (internal quotation marks, citations, and brackets omitted).

Plaintiff's Motion ignores the many individualized inquiries this Court would be required to undertake of each and every class member—inquiries that will require the type of mini-hearings on the merits of each case that, when taken together, will predominate over common questions. *Traver v. Lowe's Home Centers, Inc.*, No. 12-CV-3528-SLT-VVP, 2014 WL 12825659, at *10 (E.D.N.Y. June 27, 2014), *report and recommendation adopted sub nom. Traver v. Lowe's Home Centers, LLC*, No. 12-CV-3528-AMD-PK, 2016 WL 880169 (E.D.N.Y. Mar. 1, 2016) ("Predominance is satisfied where a class action would not entail 'a multitude of mini-trials' on individualized issues[] . . . .") (quoting *Kiobel v. Royal Dutch Petroleum Co.*, No. 02-CV-7618-KMW-HBP, 2004 WL 5719589, at *11 (S.D.N.Y. Mar. 31, 2004)).

      a.      **Ensuring Compliance with Sanctions Against the Maduro Regime and its Affiliates Will Be an Individualized Issue.**

This case presents a unique situation in which beneficial owners of the Bonds, *i.e.* potential class members, may be affiliated with, or controlled by, the Maduro regime and therefore the subject of United States sanctions. Public reporting indicates that a significant portion of the Republic's sovereign debt is held by individuals and institutions within Venezuela.[50] Venezuela historically promoted widespread domestic participation in the bond market by subsidizing purchases at preferential exchange rates.[51] This resulted in a broad base of domestic holders, ranging from individual investors to large Venezuelan companies.[52]

Furthermore, it has been noted that a material share of Defendant's sovereign bonds is held by Maduro regime insiders who obtained the bonds at significant discounts through political connections or other dealings with Maduro government officials.[53] Consequently, the proposed classes would encompass entities and individuals affiliated with, or controlled by, the Maduro regime—including state-linked or regime-aligned intermediaries. These affiliates would be the subject of United States and other international sanctions.[54] Yet, as class members, they could seek to benefit from a class action proceeding without appearing in court, providing sworn attestations, or submitting to ordinary party-level discovery. Ensuring that no class member is the subject of United States sanctions, and that benefits from this action do not otherwise flow to any sanctioned individual or entity, will be a threshold inquiry requiring individualized evidence that will predominate over common questions.

---

[50] *See* Cardozo Decl. Ex. 15.
[51] *See* Cardozo Decl. Ex. 16.
[52] *See* Cardozo Decl. Ex. 16.
[53] Javier El-Hage and Robert González, *Letter to Christiane Amanpour Regarding Conflict of Interest Involving Juan González*, Human Rights Foundation (Nov. 19, 2025), available at https://www.scribd.com/document/951524881/HRF-Amanpour-Letter-on-Juan-Gonzalez.
[54] *See supra* Section I.C.

### b.    Tracing and Proving Ownership Will Be Individualized Issues.

Tracing and proving beneficial ownership of the Bonds will also be a fact-intensive, individualized inquiry that overwhelms common questions because there is no reliable, administratively feasible method through which class membership can be determined. *In re Petrobras*, 862 F.3d at 268, 269 n.20 (administrative feasibility of determining class membership is appropriately considered in the predominance analysis).

### (1)    *There is No Administratively Feasible Method to Identify the Class.*

The difficulty in determining class membership arises from the fact that the Bonds are not directly held by their beneficial owners, in physical form or otherwise, and were not issued under any unique identifier that corresponds to individual investors' ownership interests.  Instead, the Bonds have been issued under a single ISIN/CUSIP number,[55] are held in book-entry form by a clearing agency, DTC, and are registered in the name of DTC's nominee, Cede & Co.[56]  Upon the issuance of the Bonds, DTC credited, on its book-entry system, principal amounts of the Bonds to certain DTC accountholders.[57]  Any investor who seeks to hold a beneficial interest in the Bonds must acquire such an interest through a DTC accountholder, or another intermediary who acquired its interest from a DTC accountholder. [58]

DTC does not maintain records of ownership beyond its own accountholders, and each intermediary in the chain of ownership between DTC and the ultimate beneficial owner (the putative class member here) is only responsible for keeping track of its own holdings on behalf of

---

[55] Cardozo Decl. Ex. 9 at 0162, Ex. 10 at 0258, 0394.
[56] Cardozo Decl. Ex. 9 at 0149-52 (The AT10 Bonds "will be issued in book-entry form and . . . deposited with a custodian for, and registered in the name of a nominee of DTC . . .  for the accounts of its direct and indirect participants," and the AT10 Bonds will be "registered in the name of Cede & Co . . . , as the nominee of DTC."), Ex. 10 at 0258, 0277 (generally same regarding the AA95 Bonds).
[57] Cardozo Decl. Ex. 9 at 0152, Ex. 10 at 0279.
[58] Cardozo Decl. Ex. 9 at 0150 ("Ownership of beneficial interests [in the AT10 Bonds] will be limited to DTC Accountholders," i.e., those "institutions that have accounts with DTC or its nominee," "or persons that may hold interests through DTC Accountholders."), Ex. 10 at 0279 (generally same regarding the AA95 Bonds).

its own customers.[59]  In other words—as Plaintiff acknowledged—the ownership structure of the

Bonds is layered and would require the identification of, and the review of various records from,

various individuals and institutions, including participating banks and brokerages and their

customers.[60]  It is therefore unsurprising that Plaintiff has failed to propose any administratively

feasible mechanism by which class members can be readily identified (there is none).  In fact,

discovery has closed, but Plaintiff has neither identified any potential class members nor attempted

to do so, admitting that such a task would be "difficult."[61]

(2)    *This Individualized Inquiry Will Overshadow Common Questions.*

In *Diverse Partners, LP v. AgriBank, FCB*, the Court refused to certify a class of beneficial

owners of a particular class of Notes on predominance grounds on nearly identical facts.  No. 16-

CV-9526-VEC, 2019 WL 4305008, at *2 (S.D.N.Y. Sept 11, 2019).  In that case, as here, the

Notes were issued under a single CUSIP number and beneficial interest owners "did not hold the

Notes themselves": the Notes were "held in 'book entry' form" by DTC; "DTC held the Notes in

the name of a DTC nominee on behalf of various participating banks and brokerage firms"; and

"[t]he customers of those participating banks and brokerage firms (or the customers' customers)

[were], in turn, the ultimate beneficial owners."  *Id.* at *3.

Under these circumstances, the Court held that tracing and proving beneficial ownership

would be a "sprawling" inquiry, which required (1) "identifying the various participating banks

---

[59] Cardozo Decl. Ex. 9 at 0150 ("Ownership of beneficial interests [in the AT10 Bonds] will be shown on . . . records maintained by DTC or its nominee (with respect to interests of DTC Accountholders) and on the records of DTC Accountholders (with respect to interests of persons other than DTC Accountholders)."), Ex. 10 at 0279 (generally same regarding the AA95 Bonds); *see also* David J. Fernandez et al., *Demystifying DTC: The Depository Trust Company and the Municipal Bond Market*, National Association of Bond Lawyers (March 2017), available at https://www.nabl.org/wp-content/uploads/2023/02/20170331-NABL-Demystifying-DTC.pdf.
[60] Dkt. 21 ¶ 28(c) ("The [c]lass members may be identified from records maintained by the clearing agents for the Bonds and their participants and brokers and may be notified of the pendency of this action through those entities and the media."); Cardozo Decl. Ex. 11 at 7 (Plaintiff could not identify the clearing agents for the Bonds, as well as their participants and brokers.), Ex. 12 at 2 (same).
[61] Cardozo Decl. Ex. 11 at 6 , Ex. 12 at 2, Ex. 1 at 53:21-54:19.

and brokerages that first divvied up the Notes held by DTC"; (2) "identifying the various clients on whose behalf those participants purchased those Notes"; and (3) "determining—through contractual documentation, testimony from the participants and the client entities, or some combination thereof—whether those client entities were, in fact, the beneficial owners of the Notes or whether they purchased them for yet other entities further down the waterfall." *Id.* Given that the plaintiffs had been unable to identify beneficial owners during fact discovery and had otherwise "fail[ed] to propose a method for reliably determining class membership on an administratively feasible (if not class-wide) basis," the Court concluded that "individualized questions regarding class membership would 'overshadow' *any common issues*." *Id.* (emphasis added) (citation omitted). This individualized inquiry was therefore sufficient, on its own, to defeat predominance. *Id.* at \*2; *see also Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, No. 14-CV-09764-KPF-SN, 2018 WL 739580, at \*14 (S.D.N.Y. Jan. 10, 2018) (internal quotation marks and citations omitted) ("Tracing transactions in securities that are not traded on an exchange and are recorded as indirect electronic entries in a depository would require evidence that varies from member to member and is not obviously susceptible to [ ] class-wide proof.").

               (3)    *United States Sanctions Prohibit CAPA From Accessing the Republic's Records Regarding the Bonds.*

The difficulty in tracing and proving beneficial ownership is compounded in this case because of the political crisis in Venezuela. Broad sanctions against Venezuela prohibit CAPA's members, who reside in exile in the United States, from accessing, or even requesting, internal records, documents or information regarding the Bonds in the possession of the Maduro government.[62] Beyond the documents produced by plaintiffs in this and other actions concerning the Bonds, CAPA has no documents or information concerning the Bonds, or any potential class

---

[62] Marcano Decl. ¶¶ 9-10.

member.[63]  Thus, the "sprawling," individualized inquiries described in *Diverse Partners* would no doubt be required in the unique scenario here in which the Defendant has no documents or information regarding the Bonds, dictating that class certification be denied.

### c.    Damages Will Be an Individualized Issue.

There is no dispute that the damages sought by each class member will differ[64] and thus must be calculated on an individualized basis.  While the need for individualized damages calculations, alone, does not defeat predominance, it remains an important consideration. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008).  Courts frequently assess damages in conjunction with other individualized issues and have found that, taken together, individualized damages can tip the scales against a finding of predominance.  *See Decastro v. City of New York*, No. 16-CV-3850-RA, 2019 WL 4509027, at *16 (S.D.N.Y. Sept. 19, 2019) (predominance requirement not satisfied because of individualized inquiries associated with damages, affirmative defenses, and class membership); *Weiner v. Snapple Beverage Corp.*, No. 07-CV-8742-DLC, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010) (predominance requirement not satisfied because of individualized inquiries associated with causation, injury, and damages). Here, the individualized nature of damages further supports a finding that individual questions will predominate.

### d.    Affirmative Defenses Will Be an Individualized Issue.

Defendant has a due process right "to present every available defense," *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (internal quotation marks and citations omitted), and the class-action device cannot "abridge, enlarge or modify" that right, *Wal-Mart*, 564 U.S. at 367 (quoting 28 U.S.C. § 2072(b)).  Although no potential class members have been identified, Defendant suspects that,

---

[63] Marcano Decl. ¶¶ 10-11.
[64] Dkt. 33 at 10.

if the class is certified, circumstances will arise in which it will have a colorable champerty defense against certain class members.  *See Syracuse*, 2024 WL 3637997, at *5 (noteholder's acquisition of Venezuela quasi-sovereign debt was champertous).  As previously noted, a champerty defense is a fact-specific inquiry.  It turns on the bondholder's intent in acquiring the securities and the amount paid for the securities—individualized inquiries that will predominate over common questions.[65]

### 2.    A Class Action Is Not Superior to Individual Actions.

Rule 23(b)(3) provides four factors for determining whether a class action is superior: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation already commenced by or against class members concerning the controversy; (C) the desirability or undesirability of concentrating the litigation in a particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).  The record demonstrates that individual actions are the superior—and proven—method for adjudicating the claims in this case.

### a.    Individual Actions are Feasible and Many Have Already Been Filed.

Plaintiff argues a class action is superior because "[n]umerous dispersed individual investors often cannot engage in litigation cost-effectively."[66]  But this argument fails, as Plaintiff offers no evidence that any potential class members have been, or would be, deterred from pursuing individual claims due to financial constraints or other practical considerations.

To the contrary, the record reflects that a significant number of individual actions have already been filed against Defendant in this District alone, all involving the AT10 and/or AA95

---

[65] The champerty doctrine is inapplicable when the debt is acquired for an aggregate purchase price of at least $500,000.  N.Y. Judiciary Law § 489(2).

[66] Dkt. 33 at 13.

bonds and the same type of claims Plaintiff seeks to litigate here.[67]  Moreover, Plaintiff himself has already filed two individual actions involving similar claims while represented by the same counsel, one of which involves the AA95 Bonds.[68]  Courts routinely deny class certification on superiority grounds under these circumstances, i.e., where substantial, active individual litigation already exists.  This is particularly true when, as here, the proposed class includes sophisticated investors with significant claims who have already demonstrated both the incentive and capacity to litigate independently.  *See, e.g., Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n,* 324 F. Supp. 3d 387 (S.D.N.Y. 2018) (class action was not superior because sophisticated investors with large losses could and did bring individual suits).  Indeed, as Plaintiff acknowledges, "the largest individual action involving enforcement of Venezuela sovereign bonds to date" was brought by sophisticated investors with substantial losses.[69]

Notably, the actions filed regarding Venezuelan sovereign debt to date show a marked difference in the method by which potential class members prefer to proceed with these actions. Many bondholders prefer to dismiss their actions without prejudice after the Republic reaffirms the Tolling Resolution, a strategy that gives them time to evaluate, for example, how the political situation in Venezuela evolves before determining whether to proceed with litigation.[70]  Other bondholders prefer to move the litigation forward quickly in an effort to secure a judgment.[71]  The existence of numerous individual actions with varying strategies weighs against a finding of

---

[67] *Id.* at 8 n.6 (citing individual actions); Cardozo Decl. ¶ 3.
[68] *See supra* Sections I.E, III.B.2.
[69] Dkt. 33 at 8 n.6, 14 (referring to *Aurelius Capital Master Ltd. et al. v. The Bolivarian Republic of Venezuela*); Dkt. 35 ¶ 9 (same).
[70] *See supra* Section I.D.
[71] *See e.g.*, *Casa Express Corp. as Tr. of Casa Express Tr. v. Bolivarian Republic of Venezuela,* 492 F. Supp. 3d 222 (S.D.N.Y. 2020); *Contrarian Capital Mgt., L.L.C. v. Bolivarian Republic of Venezuela,* No. 19-CV-11018-AT, 2020 WL 5849013 (S.D.N.Y. Oct. 1, 2020).

superiority because it evidences a strong interest among putative class members in controlling the prosecution of their claims.

### b.    The Proposed Classes are Unmanageable.

Plaintiff argues in conclusory fashion that a class action is superior because it will simplify and streamline the litigation process and conserve judicial resources.[72]  Not so.  As demonstrated above, individualized issues will predominate, and it is widely recognized that "the greater the number of individual issues, the less likely superiority can be established." *Dover v. Brit. Airways, PLC (UK)*, 321 F.R.D. 49, 58 (E.D.N.Y. 2017) (internal quotation marks and citation omitted).

Accordingly, courts routinely deny class certification on grounds of superiority when, as here, individualized, fact-intensive inquiries will predominate, effectively resulting in the need for mini-hearings on the resolution of each class member's claim.  *E.g.*, *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 407 F. Supp. 3d 422, 436 (S.D.N.Y. 2019) (superiority requirement not satisfied because the overwhelming need for individualized inquiries rendered the matter "unmanageable").  The individualized issues arising in this litigation would overwhelm any efficiencies a class action might otherwise offer and impose significant demands on this Court.

### c.    Tolling Does Not Support a Finding of Superiority.

Plaintiff contends that class treatment is superior and "arguably essential" because it is necessary to toll limitations for all similarly situated bondholders.[73]  However, the United States-recognized government of Venezuela has already tolled the statute of limitations for any action regarding these Bonds until December 31, 2028.[74]  Accordingly, there is no need to bring a class action for tolling purposes.[75]

---

[72] Dkt. 33 at 13.
[73] *Id.*
[74] Dkt. 36-2.
[75] Notably, Plaintiff does not cite to any authority supporting the proposition that uncertainty surrounding tolling renders a class action "superior."

Plaintiff's proposed expert raises purported questions about the enforceability of the Tolling Resolution under *Venezuelan* law, but these questions do not impact the enforceability of the Tolling Resolution in United States Courts for several reasons:

*First*, the National Assembly is the only government of Venezuela recognized by the United States,[76] and the act of state doctrine confers presumptive validity on its official acts, including its issuance of the Tolling Resolution. *See Jimenez v. Palacios*, 250 A.3d 814, 830-32 (Del. Ch. 2019). Therefore, "[j]udicial inquiry into the law of Venezuela underlying the[] act[] is neither necessary nor appropriate."[77]  *Caballero v. Fuerzas Armadas Revolucionarias de Columbia*, No. 20-MC-40-LJV, 2021 WL 1884110, at *7 (W.D.N.Y. May 11, 2021) (citation omitted) (recognizing that the National Assembly's enactment of the Transition Statute constitutes an act of state that "must be accepted by this Court as valid").

*Second*, as demonstrated by the Declaration of Vicente González de la Vega ("Gonzalez Decl."), even if it were appropriate to consult Venezuelan law, the Tolling Resolution is neither constitutionally nor procedurally deficient.[78]  The National Assembly issued the Tolling Resolution pursuant to its constitutional authority under the Transition Statute and was not obligated to comply with the procedural requirements applicable to ordinary legislation under the Venezuelan Civil Code.[79]

*Third,* under New York law (which governs the Bonds), there is no question that bondholders may rely (at the very least) on the apparent authority of the only government of Venezuela that has been recognized by the United States in tolling limitations periods.  *See, e.g., 1964 Realty LLC v. Consulate of the State of Qatar-New York,* No. 14-CI-6429-ER, 2015 WL

---

[76] *See supra* Section I.B.
[77] Cardozo Decl. Ex. 24 at 2.
[78] Gonzalez Decl. Sections IV, V.
[79] Gonzalez Decl. Sections IV, V.

5197327 (S.D.N.Y. Sept. 4, 2015) (apparent authority may bind a sovereign in private commercial acts); *Themis Cap., LLC v. Democratic Republic of Congo*, 35 F. Supp. 3d 457, 478 (S.D.N.Y. 2014) (recognizing that apparent authority principles apply to "quintessentially private" acts of a sovereign like "restructuring debts . . . and entering into tolling agreements"), *aff'd in part, rev'd in part and remanded,* 626 F. App'x 346 (2d Cir. 2015). Accordingly, the purported need to toll the statute of limitations does not support a finding of superiority.

## D.    Proposed Class Counsel is Inadequate Under Rule 23(g).

"'[A] court that certifies a class must appoint class counsel' at the same time it certifies the class, and the court is thus required to consider the adequacy of class counsel in its class certification decision." *Huang v. Shanghai City Corp*, No. 19-CV-7702-LJL, 2022 WL 1468450, at *6 (S.D.N.Y. May 10, 2022) (quoting Fed. R. Civ. P. 23(g)). Rule 23(g)(1)(B) provides that, in determining whether the proposed class counsel is adequate, a court may consider "any matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).[80]

### 1.    Proposed Class Counsel Failed to Disclose and Seek Approval of a Fee-sharing, Co-counsel Relationship.

Duane Morris should not be appointed lead counsel because it failed to disclose and seek the Court's approval of a fee-sharing co-counsel relationship. This omission is disqualifying.

Plaintiff asks the Court to appoint Duane Morris as class counsel.[81]  Duane Morris is Plaintiff's sole counsel of record; no other firm has appeared on Plaintiff's behalf. Yet, Plaintiff is actually being represented by at least two additional lawyers from other firms—Michael Spencer

---

[80] Historically, courts examined both the adequacy of the named plaintiff and the adequacy of the proposed class counsel under Rule 23(a)(4). *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 463 (S.D.N.Y. 2007). While the 2003 Amendments to Rule 23 shifted the discussion of counsel's adequacy from Rule 23(a)(4) to Rule 23(g), courts in this circuit continue to consider the adequacy of class counsel under Rule 23(a)(4) given that the analysis is "largely the same." *Id.*

[81] Dkt. 32 at 2.

and Patricia Rosito Vago. Indeed, the terms of Plaintiff's engagement agreement confirm both Mr. Spencer and Ms. Rosito Vago are serving as Duane Morris' co-counsel in this litigation—"assum[ing] joint responsibility" and slated to "share any fee award."[82] These additional counsel appear to be actively involved in the litigation.[83] Emails produced in discovery show Plaintiff often chooses to communicate with Mr. Spencer rather than Duane Morris;[84] at his deposition, Plaintiff could not recall which counsel performed a particular task;[85] and both Duane Morris and Mr. Spencer attended and participated in the defense of Plaintiff's deposition.[86]

Plaintiff's request to appoint only one firm as lead counsel without disclosing a fee-sharing co-counsel arrangement with two other attorneys is disqualifying. In *Garcia De León v. New York Univ.*, the named plaintiff sought to appoint a particular firm as class counsel but, as here, it was later discovered that another firm, which had appeared and filed the initial complaint, planned to serve as the named plaintiff's co-counsel and to collect a portion of any fee received. No. 21-CV-05005-CM, 2022 WL 2237452, at *16 (S.D.N.Y. June 22, 2022). The Court found the fact that it "ha[d] not been asked to bless a co-counsel arrangement, or to appoint two firms as lead counsel" was "a serious, indeed, disqualifying error on counsel's part," which "render[ed] both firms unfit to serve as class counsel." *Id.* The Court explained that it "rarely if ever permits co-lead counsel in a class action," *id.*, because "the involvement of multiple firms tends to inflate legal fees to the detriment of the other class members," *In re Allergan PLC Sec. Litig.*, No. 18-CV-12089-CM-GWG, 2020 WL 5796763, at *6 (S.D.N.Y. Sept. 29, 2020).[87]

---

[82] Cardozo Decl. Ex. 14 at 1-2.
[83] Plaintiff engaged Mr. Spencer and Ms. Rosito Vago for his individual actions involving Venezuela sovereign and quasi-sovereign debt securities before retaining Duane Morris, and their engagement has continued with this litigation. Dkt. 34 ¶¶ 10-11; Cardozo Decl. Ex. 1 at 19:3-21:20, Ex. 14 at 1-2.
[84] *E.g.,* Cardozo Decl. Ex. 5 at 0020, Ex. 17 at 0411-12.
[85] Cardozo Decl. Ex. 1 at 119:22-120:13.
[86] Cardozo Decl. Ex. 1 at 3:2-13, 108:13-14, 136:6-23.
[87] Although Plaintiff's moving papers label Mr. Spencer and Ms. Rosito Vago as "associated counsel" "working" with Duane Morris, Dkt. 35-1 at 5, and note that some an unnamed attorney is "closely involved in the prosecution

2.    **Plaintiff's Deficient Self-Collection In This Litigation Raises Concerns Regarding Whether Counsel Will Protect the Interests of Class Members.**

When assessing whether proposed class counsel will fairly and adequately represent the interests of class members, courts routinely consider counsel's conduct in the litigation. *See, e.g.*, *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 597 (S.D.N.Y. 2020) ("A lawyer who is qualified by experience and education to represent a[] . . . class may nonetheless prove herself to be inadequate based on her commitment, preparation, and work in the instant case."). Duane Morris' apparent failure to oversee document collection in this case raises concerns about its ability to fairly and adequately represent the proposed classes.

At his deposition, Plaintiff indicated that he conducted searches of his own devices for document productions in this case. When asked what steps he had taken to search for responsive information, Plaintiff explained that he "tried to collect everything that was . . . relevant" by checking folders on various electronic devices and by typing particular terms in his "e-mail inbox folder," which he described as taking a "huge effort" and being "really a heavy job."[88] When asked about counsel's involvement in the collection, Plaintiff testified that Duane Morris simply told him "to do a deep production" and "don't forget anything."[89]

The lack of meaningful oversight and review of Plaintiff's self-collection was readily apparent through numerous gaps in Plaintiff's productions. For example: categories of responsive documents, such as documents evidencing Plaintiff's authorization to bring suit, were not initially produced; emails were produced without attachments; documents were produced without

---

of these cases," Dkt. 33 at 11, such disclosure is insufficient to place the Court on notice of the true nature of the co-counsel, fee-sharing relationship present here. *In re Allergan*, 2020 WL 5796763, at *8 (rejecting argument that a law firm had been "fully transparent about . . . [its] participation in the litigation[] as evidenced by [that firm's] presence on pleadings and motions and by its appearance on the docket"); *see also Garcia*, 2022 WL 2237452, at *16 (finding nondisclosure of co-counsel, fee-sharing relationship even though co-counsel had appeared and filed the complaint).

[88] Cardozo Decl. Ex. 1 at 147:21-148:13.
[89] Cardozo Decl. Ex. 1 at 148:14-23.

transmittal emails; documents and communications, which were referenced in emails and letters that were deemed responsive and produced, were not provided.[90]  These defects, which are facially apparent, would have been detected though a diligent review prior to production, especially since Plaintiff only produced 52 documents in fact discovery.  Nevertheless, Duane Morris repeatedly assured Defendant's counsel that all non-privileged documents responsive to Defendant's discovery requests were produced, Defendant's counsel repeatedly demonstrated that this was not the case, and Plaintiff repeatedly produced additional documents in response.[91]  This cycle indicates that Duane Morris was relying on Plaintiff's word for the completeness and accuracy of the information collected, which is improper.[92]

"It is not appropriate to take a client's self-collection of documents, assume it is complete, and not take steps to determine whether significant gaps exist." *Herman v. City of New York*, 334 F.R.D. 377, 386 (E.D.N.Y. 2020).  Rather, "[t]o satisfy the Requirements of Rule 26(g)(1) and comply with counsel's ethical obligations as an officer of the Court, counsel must be actively involved in searching and producing discovery." *Grullon v. Lewis*, No. 24-CV-04892-VEC-SN, 2025 WL 1693425, at *1 (S.D.N.Y. June 17, 2025).  Because Duane Morris' oversight of document production in this case has raised doubts as to its ability to fairly and adequately represent the classes, Plaintiff's motion for class certification and request to appoint Duane Morris as class counsel should be denied.  *See Kulig v. Midland Funding, LLC*, No. 13-CV-4175-PKC, 2014 WL 5017817, at *6 (S.D.N.Y. Sept. 26, 2014).

---

[90] Cardozo Decl. Ex. 18 at 2-3, Ex. 19 at 4-5, Ex. 14 at 6-7, Ex. 21 at 1.

[91] Cardozo Decl. Ex. 23, Ex. 19 at 1-4, Ex. 14 at 1-5. Defendant's counsel directed that parent-child relationships (the association between e-mails and attachments) be preserved and document families be produced. Cardozo Decl. Ex. 20 ¶ 16.  Duane Morris did not object to this instruction. Cardozo Decl. Ex. 22 at 1-3.

[92] Defendant's interrogatories asked Plaintiff to identify persons from whom he had acquired the Bonds and persons with knowledge of the acquisition.  Yet Plaintiff failed to identify Mr. Giovannini, the individual from whom he acquired the Bonds.  *See* Cardozo Decl. Ex. 11 at 3-5, Ex. 12 at 2; *see supra* Section I.E.

## IV.    CONCLUSION

Defendant respectfully requests that the Court deny the Motion and grant such other and

further relief to which Defendant may be entitled.

Dated: New York, New York
       November 26, 2025

Respectfully submitted,

*/s/ Camilo Cardozo*
_____

VINSON & ELKINS LLP
Camilo Cardozo
Marisa Antonelli
Dora Georgescu
The Grace Building
1114 Avenue of the Americas
32nd Floor
New York, New York 10036
Telephone: (212) 237-0186
ccardozo@velaw.com
mantonelli@velaw.com
dgeorgescu@velaw.com

*Counsel for Defendant the Bolivarian
Republic of Venezuela*

## CERTIFICATE OF SERVICE

I certify that on November 26, 2025, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on Plaintiff's counsel of record, identified below:

Anthony J. Costantini
Arti Fotedar
Stephanie Lamerce
Jillian Marie Dreusike
DUANE MORRIS LLP
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, New York 10017
Telephone: (215) 979-1506
ajcostantini@duanemorris.com
afotedar@duanemorris.com
slamerce@duanemorris.com
jdreusike@duanemorris.com

Harvey W. Gurland, Jr
DUANE MORRIS LLP
201 South Biscayne Boulevard
Suite 3400
Miami, FL 33131
Telephone: (305) 960-2214
hwgurland@duanemorris.com

*/s/ Camilo Cardozo*
Camilo Cardozo

## <u>LOCAL RULE 7.1(c) CERTIFICATION</u>

I, Camilo Cardozo, an attorney duly admitted to practice before this Court, hereby certify that this memorandum of law in Opposition to Plaintiff's Motion for Class Certification, Appointment of Plaintiff as Class Representative, and Appointment of Duane Morris LLP as Class Counsel complies with the word limit set forth in Local Rule 7.1(c), as it contains 8,651 words, excluding those items permitted for exclusion under this Local Rule.   In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

*/s/ Camilo Cardozo*
Camilo Cardozo
