UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MASSIMO MAZZACCONE, individually and on behalf of all others similarly situated,

    Plaintiff,

  v.

THE BOLIVARIAN REPUBLIC OF VENEZUELA,

    Defendant.

Civil Case No.: 1:24-cv-06168 (DLC)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION,
APPOINTMENT OF PLAINTIFF AS CLASS REPRESENTATIVE,
AND APPOINTMENT OF DUANE MORRIS LLP AS CLASS COUNSEL**

DUANE MORRIS LLP
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, New York 10017-4669
(212) 692-1000
*Counsel for Plaintiff*

**TABLE OF CONTENTS**

Page

Table of Authorities ............................................................................................................. ii

INTRODUCTION ...............................................................................................................1

ARGUMENT.......................................................................................................................2

    I.      The Republic's Champerty Argument Ignores the
Clear Elements of the Applicable New York Statute .............................................2

    II.     A Class Action is Superior; Individual Issues
Regarding Tolling or Sanctions Will Not Predominate ..........................................5

           A.     The Republic has not refuted Plaintiff's argument that
Class Members deserve to obtain the definitive tolling
protections available through the present action........................................ 5

           B.     The necessity to comply with OFAC sanctions, if a
Class judgment or settlement is achieved, is not a
valid argument against Class certification. ................................................ 8

           C.     Class notice and any eventual damages to Class Members can
be reliably distributed to Class Members using DTCC procedures............ 9

           D.     Calculation of damages will not pose administrative difficulties............. 11

    III.    Supporting Counsel's Involvement Is
Consistent with Effective and Efficient Representation of the Class................11

CONCLUSION..................................................................................................................14

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alfred Dunhill of London, Inc. v. Republic of Cuba*,
   425 U.S. 682 (1976) ..................................................................................................................6

*Allied Bank Int'l v. Banco Credito Agricola de Cartago*,
   757 F.2d 516 (2d Cir. 1985) .................................................................................................5, 6

*Concord Landscapers v. Pincus*,
   41 A.D.2d 759 (N.Y. App. Div. 2d Dept. 1973) ......................................................................2

*Decastro v. City of New York*,
   No. 16-CV-3850 (RA), 2019 WL 4509027 (S.D.N.Y. 2019) .................................................11

*Diverse Partners, LP v. AgriBank, FCB*,
   No. 16-CV-9526 (VEC), 2019 WL 4305008 (S.D.N.Y. Sept. 11, 2019) ................................10

*Elliott Assoc., L.P. v. Banco de la Nacion*,
   194 F.3d 363 (2d Cir. 1999) .....................................................................................................3

*First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda*,
   877 F.2d 189 (2d Cir. 1989) .....................................................................................................7

*Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emps. Ret. Sys.*,
   814 F.3d 652 (2d Cir. 2016) ...................................................................................................12

*In re Application of Sarrio S.A.*,
   No. M 9-372. 1995 WL 598988 (S.D.N.Y. Oct. 11, 1995) ....................................................13

*Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*,
   No. 02 Civ. 0795(CBM), 2003 WL 21878798 (S.D.N.Y. Aug. 8, 2003) ............................. 6-7

*Mazzini v. Republic of Argentina*,
   No. 03 CIV. 8120TPG, 2005 WL 743090 (S.D.N.Y. Mar. 31, 2005),
   *aff'd*, 282 F. App'x 908 (2d Cir. 2008) ....................................................................................4

*Moses v. McDivitt*,
   88 N.Y. 62 (N.Y. 1882) ............................................................................................................4

*NML Capital, Ltd. v. Republic of Argentina*,
   727 F.3d 230 (2d Cir. 2013) ...................................................................................................10

*Peterson Energia Inversora, S.A.U. v. Argentine Republic*,
   No. 15-CV-2739 (LAP), 2016 WL 4735367 (S.D.N.Y. Sept. 9, 2016) ...............................6, 7

**Page(s)**

*Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*,
   No. 19 Civ. 10023 (KPF), 2025 WL 2675871 (S.D.N.Y. Sept. 18, 2025) ................................6

*Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*,
   495 F. Supp. 3d 257 (S.D.N.Y. 2020) (vacated and remanded on other grounds by
   *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*,
   106 F.4th 263 (2d Cir. 2024)) .................................................................................................6

*Republic of Benin v. Mezei*,
   --F.Supp.2d--, 2010 WL 3564270 (S.D.N.Y. Sept. 9, 2010) .....................................................7

*Royal Park Inv. SA/NV v. Wells Fargo Bank, N.A.*,
   No. 14-CV-09764 (KPF) (SN), 2018 WL 739580 (S.D.N.Y. Jan. 10, 2018) ..........................10

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010)......................................................................................................10

*Storr v. Nat'l Def. Sec. Council of Republic of Indonesia-Jakarta*,
   No. 95 CIV. 9663 (AGS), 1997 WL 633405 (S.D.N.Y. Oct. 14, 1997) ..................................7

*Trust for the Certificate Holders of Merrill Lynch Mortgage Inv'rs, Inc. v.
   Love Funding Corp.*,
   13 N.Y.3d 190 (N.Y. 2009) ......................................................................................................4

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
   623 F.3d 82 (2d Cir. 2010)......................................................................................................12

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*,
   493 U.S. 400 (1990).................................................................................................................5

## **Statutes and Other Authorities**

Fed. R. Civ. P. 23.............................................................................................................................9

N.Y. Jud. Law § 489(1) ..........................................................................................................2, 3, 4

## **INTRODUCTION**

Plaintiff Massimo Mazzaccone respectfully submits this Reply Memorandum of Law in further support of his motion for class certification. This reply is accompanied by the Declaration of William W. Wickersham concerning class notice; the Declaration of Michael C. Spencer concerning the role of supporting counsel; and a further Declaration from proposed Class Counsel Anthony J. Costantini of Duane Morris LLP providing excerpts from Mr. Mazzaccone's deposition.

Defendant the Bolivarian Republic of Venezuela (the "Republic" or "Defendant")'s opposition focuses almost entirely on its inapplicable champerty defense, which fails since Plaintiff is not a professional debt collector.  Additionally, the Republic omitted the most significant portion of the champerty statute in its brief.  The Republic's further attempts to overcomplicate the case are unavailing. A class action is superior to individual actions and will protect the rights of potential Class Members:

- The legal problems with the National Assembly's Tolling Resolution persist;

- The United States sanctions will not meaningfully impact the case; and

- It is administratively feasible to identify the class through the Depository Trust & Clearing Corporation ("DTCC")'s clearing system, as has commonly been accomplished in similar situations.

Finally, Duane Morris LLP is fully adequate to serve as Class Counsel.  Mr. Spencer and Patricia Rosito Vago are permitted to assist as non-lead counsel, and Plaintiff has acted diligently and in good faith in satisfying its discovery obligations.

## ARGUMENT

**I.     The Republic's Champerty Argument Ignores the
         Clear Elements of the Applicable New York Statute**

The Republic attempts to derail Mr. Mazzaccone's application to become the lead plaintiff in his case by arguing that his acquisition of the subject securities was champertous. However, the Republic's argument wholly omits an essential section of New York's champerty statute.

The Republic's brief asserts: "Section 489(1) restricts individuals…from purchasing or taking an assignment of notes or other securities 'with the intent and for the purpose of bringing an action or proceeding thereon'" (ECF 51 at 11) (internal quotation omitted). The statute actually states: "No person or co-partnership, ***engaged directly or indirectly in the business of collection and adjustment of claims***, and no corporation or association . . . shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action . . . with the intent and for the purpose of bringing an action or proceeding thereon." N.Y. Jud. Law § 489(1) (emphasis added).

This omission by the Republic's counsel is salient. The champerty statute only applies to individuals who are engaged "in the business of collection and adjustment of claims," aka professional debt collectors. *Id.*; *see also Concord Landscapers v. Pincus*, 41 A.D.2d 759, 759 (N.Y. App. Div. 2d Dept. 1973) ("It has been consistently held that section 489 prohibits the purchase of a judgment by one engaged in the business of collection and adjustment of claims if the purpose thereof is to commence an action or special proceeding thereon and does not prohibit such a purchase for the purpose of enforcing the judgment's collection . . .") (internal citation omitted).

2

Even if an individual acquires a debt with the intent to litigate, there is no champerty where the "primary purpose of the suit is the collection of the debt acquired." *See Elliott Assoc., L.P. v. Banco de la Nacion*, 194 F.3d 363, 372 (2d Cir. 1999) (citing to New York case law and observing, "the mischief Section 489 was intended to remedy did not include the acquisition of debt with the motive of collecting it, notwithstanding that litigation might be a necessary step in the process").

Plaintiff Mazzaccone is not engaged in the business of collecting claims or debts. As stated in his Declaration, Mr. Mazzaccone is a "financial and tax advisor, a business owner and a professional trustee." (ECF 34 ¶ 7). He provides financial advice to others, he is not a debt collector, and he has never been involved with lawsuits until this case and his other individual actions regarding Venezuelan notes and bonds. All the champerty cases cited by the Republic involved corporate defendants, did not discuss the debt collector requirement for individuals under § 489(1), and are therefore inapplicable. (ECF 51 at 11-13).

Further, during his deposition, Mr. Mazzaccone discussed how he was a long-time holder of Venezuelan bonds prior to pursuing any lawsuits, and that he purchased the Notes primarily in hopes that the political situation would change in Venezuela following the July 28, 2024 presidential election.[1] He purchased the Notes as investments, intending to enforce them, not to make money from litigation. *See Elliott Assoc., L.P.*, 194 F.3d at 379 (finding "conduct not proscribed by the statute includes where 'the plaintiff bought the bond as an investment, but with the intention of collecting it by suit if compelled to resort to that means

---

[1] *See also* Declaration of Anthony J. Costantini ("Costantini Reply Dec."), Ex A at 86:13-23 ("The main reason I decided to acquire these bonds were that--I decided to bet on the political--the elections that were about to happen in July 2024…also the international media, newspapers, were betting on some kind of --recognizing election by the US so that would…mean positive outcome for the bond holders").

3

for obtaining payment'") (quoting *Moses v. McDivitt*, 88 N.Y. 62, 67 (N.Y. 1882)); *see also Mazzini v. Republic of Argentina*, No. 03 CIV. 8120TPG, 2005 WL 743090, at *4 (S.D.N.Y. Mar. 31, 2005), *aff'd*, 282 F. App'x 908 (2d Cir. 2008) (finding "[t]he evidence is clear that plaintiffs bought their bonds with the intention of collecting on them, even though they clearly were aware that a lawsuit might be necessary. There was therefore no champerty in violation of Section 489. . .").[2]

The Republic also says it "suspects" that "it will have a colorable champerty defense against certain class members" should the class be certified. (ECF 51 at 19-20). This is impossible because the proposed class is limited to Noteholders on August 14, 2024, who continue to hold thereafter. (ECF 33 at 2; ECF 1 at 2). All proposed Class Members already owned their Notes prior to the filing of this lawsuit, which they did not file, so bringing this lawsuit could not be their primary purpose for purchasing their respective Notes. *See Trust for the Certificate Holders of Merrill Lynch Mortgage Inv'rs, Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 201 (N.Y. 2009) (maintaining "[w]hat the statute prohibits, as the Appellate Division stated over a century ago, is the purchase of claims with the intent and for the purpose of bringing an action that the purchaser may involve parties in costs and annoyance, where such claims would not be prosecuted if not stirred up in an effort to secure costs") (internal quotations and citations omitted). Perhaps if the proposed class included debt collectors or corporations who purchased Notes after the lawsuit was filed hoping to belatedly "jump on the bandwagon," the champerty defense might apply, but it does not, so the champerty defense is inapplicable to the proposed class.

---

[2] *See also* Costantini Reply Decl. Ex A at 89:7 (Mazzaccone referring to litigation as a "worst-case scenario").

4

## II. A Class Action is Superior; Individual Issues Regarding Tolling or Sanctions Will Not Predominate

### A. The Republic has not refuted Plaintiff's argument that Class Members deserve to obtain the definitive tolling protections available through the present action.

Tolling the six-year statute of limitations through this case is necessary to protect the rights of the proposed Class Members, particularly investors who did not bring individual suits prior to August 15, 2024, the date on which the limitation period on these securities expired. (ECF 33 at 5). It is inherently suspect for the Republic to argue that it already established tolling since the Republic is thereby arguing against its own defenses. The Republic's various arguments in favor of tolling are all potentially vulnerable should the Republic wish to avoid honoring its obligations, as demonstrated by the Declaration of Venezuelan law expert Hector Fernandez. (ECF 33 at 14; ECF 36). The recent upheavals in Venezuela only accentuate the tolling uncertainties faced by investors.

The Republic argues that the act of state doctrine under U.S. law already ensures that the National Assembly's Tolling Resolution provides definitive protection to Note holders. (ECF 51 at 23). There is a viable argument that an act occurring outside the Republic's sovereign territory is not an act of state. *See W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990) (the act of state doctrine only applies to "the official act of a foreign sovereign performed within its own territory").

The Second Circuit holds that the act of state doctrine does not apply to foreign government acts with extraterritorial effects. *See Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 522 (2d Cir. 1985) (finding "[a]cts of foreign governments purporting to have extraterritorial effect—and consequently, by definition, falling outside the scope of the act of state doctrine—should be recognized by the courts only if they are consistent with the law and

5

policy of the United States"). "The Second Circuit in *Allied Bank* instructed that the act of state doctrine is not applicable when the situs of debt at the time it was promulgated was the United States, rather than a foreign country." *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, No. 19 Civ. 10023 (KPF), 2025 WL 2675871, at *28 (S.D.N.Y. Sept. 18, 2025) (citing *Allied*, 757 F.2d at 521). In the Petróleos de Venezuela ("PDVSA") litigation cited above, Judge Failla recently held that the act of state doctrine "does not apply to the official acts of the National Assembly" because the PDVSA bonds at issue in the case involved extraterritorial debt obligations. *Id.* at *29. The same circumstances apply to the Notes at issue in this case, and the act of state doctrine therefore does not apply to the National Assembly's Tolling Resolution. Like in the PDVSA case, "[t]he fact remains that papers were signed, contracts were executed, [and] payments are due in New York…Venezuela has no power, save by the actions of this Court or intervention by the United States, to stop [parties] from enforcing their contractual remedies." *Id.* (quoting *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, 495 F. Supp. 3d 257, 280-81 (S.D.N.Y. 2020) (vacated and remanded on other grounds by *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, 106 F.4th 263 (2d Cir. 2024))).

Further, the Tolling Resolution covers "purely commercial conduct," which falls outside of the act of state doctrine. *See Peterson Energia Inversora, S.A.U. v. Argentine Republic*, No. 15-CV-2739 (LAP), 2016 WL 4735367, at *7 (S.D.N.Y. Sept. 9, 2016) ("The [act of state] doctrine does not, however, apply to the purely commercial conduct of a foreign sovereign"); *see also Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 695 (1976) (plurality holding that "the concept of an act of state should not be extended to include the repudiation of a purely commercial obligation owed by a foreign sovereign or by one of its commercial instrumentalities"). In *Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*, Judge Motley

6

found that "the contract agreements regarding choice of law, choice of forum and definition of the transactions" regarding PDVSA contracts were "commercial activities" and therefore "ripe for an application of the exception" to the act of state doctrine. No. 02 Civ. 0795(CBM), 2003 WL 21878798, at *8-9 (S.D.N.Y. Aug. 8, 2003).  Her decision was in part because PDVSA "had explicitly agreed to resolve disputes about the meaning of certain contract terms in the courts of New York." *Id.* at *8.  Similarly, the Tolling Resolution allegedly modifies the agreements governing the Notes, which are subject to New York law.  This is a "private and commercial act[]" from the Republic, entirely separate from its capacity as a sovereign.  *Id.* at *9.

Proposed Class members also cannot rely on the Republic's alleged apparent authority because the Tolling Resolution is an alleged modification of a New York based contract, not an unreviewable sovereign act.  Under New York law, "whether apparent authority exists [] requires a factual inquiry into the principal's manifestations to third persons" and "the circumstances of the transaction must be examined to determine whether the person relying on the apparent authority fulfilled his 'duty of inquiry.'" *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda*, 877 F.2d 189, 193-94 (2d Cir. 1989).  The duty to inquire conclusively exists when a "transaction is extraordinary." *Republic of Benin v. Mezei*, --F.Supp.2d--, 2010 WL 3564270, at *7 (S.D.N.Y. Sept. 9, 2010).  The circumstances surrounding the Tolling Resolution (a broad resolution applicable to all Venezuelan notes and bonds made by a dissolved legislative body not recognized by the country itself) are certainly extraordinary.  *See Storr v. Nat'l Def. Sec. Council of Republic of Indonesia-Jakarta*, No. 95 CIV. 9663 (AGS), 1997 WL 633405, at *3 (S.D.N.Y. Oct. 14, 1997) (finding the "circumstances of [the] transaction were extraordinary" in case regarding whether an agency of the Republic of Indonesia had actual authority to issue promissory notes").  No courts to date have performed this fact-based inquiry for the Tolling Resolution, and even if the National

7

Assembly has apparent authority, said authority could be irrelevant to Noteholders if a subsequent Venezuelan government is recognized by the United States and decides to nullify the resolution. (*See* ECF 36 ¶¶ 19-43 (explaining that under Venezuelan law a legislature cannot irrevocably bind its successors)).

Under the doctrine of legislative temporality, even if the act of state doctrine applies to the Tolling Resolution and the National Assembly is deemed to have possessed apparent authority, Noteholders could be left without any protection if a later National Assembly or other recognized government decides to reverse or nullify the Resolution. (ECF 33 at 3,14). The proposed Class Members here deserve the same protection against a limitation bar as received by the institutional investors who obtained so-ordered relief in *Aurelius Capital Master Ltd. et al v. The Bolivarian Republic of Venezuela*, Index No. 655071/2023 (NYSCEF No. 1), (N.Y. Sup. Ct. Oct. 11, 2023). Only this class action can ensure that proposed Class Members are protected from a possible limitations defense.

### B. The necessity to comply with OFAC sanctions, if a Class judgment or settlement is achieved, is not a valid argument against Class certification.

Whether any proposed Class Members are subject to OFAC sanctions by the U.S. government is not relevant until the issue would actually arise in connection with a hypothetical settlement or post-judgment determination of damages. Should any Class Member apply for judgment damages against the Republic or seek to receive damages as part of a Class settlement, that person or entity can be checked against OFAC's comprehensive Specially Designated Nationals and Blocked Persons List ("SDN List"), which includes all sanctioned individuals.[3] This

---

[3] "Specially Designated Nationals List," *OFAC*, (last updated Jan. 8, 2026) https://sanctionslist.ofac.treas.gov/Home/SdnList.

simple inquiry will not require the "individualized evidence" referenced by the Republic. (ECF 51 at 15).

### C. Class notice and any eventual damages to Class Members can be reliably distributed to Class Members using DTCC procedures.

The Republic's opposition misrepresents the DTCC clearing system, which routinely provides notices to investors in connection with litigated claims. The system will facilitate reliable provision of notice to all Members of the Class (if the class is certified) and enable distribution of settlement or judgment benefits if achieved by the Class. There is no requirement (legal or practical) that a roster of ascertainable Class Members at any given date be created. Rule 23 requires effective distribution of notice and benefits, not a consensus of members or their brokers and intermediaries. Fed. R. Civ. P. 23.

As discussed in the Declaration of William W. Wickersham, the DTCC clearing system "is the most efficient and targeted program to reach investors throughout the world with any class action notice involving their securities."[4] The DTCC clearing system already effectively provided the semiannual interest payments on the Notes to all holders prior to the Republic's cessation of payments in October 2017. (ECF 33 at 1).[5] There will be no "sprawling inquiry" as described by the Republic, (ECF 51 at 17), but the utilization of a system "carefully developed over several decades of successful use" and overseen by the U.S. Securities and Exchange Commission ("SEC") and Federal Reserve.[6]

DTCC "routinely distributes, through its system, notices to investors in connection with litigated claims, including class actions…"[7] DTCC Participants receive notices from DTCC,

---

[4] Wickersham Decl. ¶ 10.
[5] *Id.* ¶ 6.
[6] *Id.* ¶¶ 5-8.
[7] *Id.* ¶ 7.

9

which they must deliver "to any downstream intermediaries, who are responsible for timely delivery of the notices to the beneficial owners."[8] "The system has become accepted as the definitive method of providing notice to investors in securities included in the DTCC clearing system."[9] Plaintiffs will provide notice using the usual publication methods, and the DTCC clearing system enhances the class notification process instead of impeding it.[10]

The Republic fails to cite to the Argentina sovereign debt class actions, which used DTCC's clearing system to notify proposed class members and had classes certified using parameters similar to Plaintiff's. *See e.g.*, *Seijas v. Republic of Argentina*, 606 F.3d 53, 56 (2d Cir. 2010) (upholding certification of "eight classes of plaintiffs who purchased bonds prior to the date the class actions were filed and who held them continuously until the time of final judgment"); *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 239 (2d Cir. 2013) (describing how Argentina uses DTCC to transfer funds to beneficial interest holders of the relevant bonds). The two cases cited by the Republic against using DTCC's system are inapplicable since they involved proposed class members who sold their notes prior to class certification. *See Diverse Partners, LP v. AgriBank, FCB*, No. 16-CV-9526 (VEC), 2019 WL 4305008, at *1 (S.D.N.Y. Sept. 11, 2019) (seeking to certify class "of all persons who beneficially owned Notes when the Redemption occurred"); *Royal Park Inv. SA/NV v. Wells Fargo Bank, N.A.*, No. 14-CV-09764 (KPF) (SN), 2018 WL 739580, at *2 (S.D.N.Y. Jan. 10, 2018) (seeking to certify class of "[a]ll persons and entities who held Certificates in the Covered Trusts at any time between the date of issuance to no later than 60 days after notice of class certification"). It is understandable that the DTCC clearing system might not be able to identify class members who previously sold their notes, but that is

---

[8] *Id.*
[9] *Id.* ¶ 8.
[10] *Id.* ¶ 10.

irrelevant under the proposed class definition here.  The DTCC clearing system, combined with normal class action notification procedures, provides the "most efficient and targeted" method for providing notice to the ascertainable members of the proposed Class.[11]

### D. Calculation of damages will not pose administrative difficulties.

Eventual calculations of damages entitlements for each proposed Class Member will be based on how much principal and interest each Class Member is owed, a simple and standardized process for everyone.  The cases the Republic cites involved complex and variable damages irrelevant to this case.  *See e.g., Decastro v. City of New York*, No. 16-CV-3850 (RA), 2019 WL 4509027, at *16 (S.D.N.Y. 2019) (remarking that assessing damages "could require individual hearings" since "claims for lost income, lost use of vehicle, and emotional distress would likely need to be assessed on an individual basis").  Damages calculations should have no impact on class certification.

## III. Supporting Counsel's Involvement Is Consistent with Effective and Efficient Representation of the Class

The Republic's position that Lead Counsel in a class action is not permitted to enter into joint engagements with additional counsel for prosecution of the action is not supported by any applicable rules or caselaw under the circumstances here.

New York attorney Michael C. Spencer and Argentine lawyer Patricia Rosita Vago referred holders of Venezuelan securities to Duane Morris LLP starting in 2020.  Mr. Spencer and Ms. Rosito Vago had worked extensively on investors' recovery claims on defaulted Argentine securities in the first two decades of the 2000s, and also worked with Rudolph J. Di Massa of Duane Morris LLP, who represented similar investors.  When sovereign and quasi-sovereign

---

[11] Wickersham Decl. ¶ 10.

Venezuelan securities began defaulting and litigation seemed advisable, these lawyers discussed collaboration, and then began entering into joint retainer agreements with investors who were ready to litigate, resulting in the present action and others.

As summarized in Mr. Spencer's Declaration, it was agreed that Duane Morris LLP would become counsel of record under the joint retainers.[12]  Mr. Spencer is a New York lawyer experienced with plaintiffs' class actions and sovereign debt litigation.  Ms. Rosita Vago is the main liaison with the team's many international clients, assisting with language and legal questions.  Neither attorney is appearing as counsel of record (Ms. Rosita Vago is not admitted in New York), so this is not a situation of competing or potentially duplicative efforts by more than one lead counsel.  To date, counsel's work has proceeded efficiently and effectively.  Mr. Spencer and Ms. Rosita Vago intend to join Duane Morris LLP's application for class counsel fees should the Class receive a favorable judgment.  The client retainers and counsel's activities adhere to the applicable rules for joint representation and fee sharing.[13]  Plaintiff provided the Republic with all necessary information during his deposition, and the Republic's accusation of hidden information is baseless.[14]

The Republic also suggests that Mr. Mazzaccone's production of documents from his home and office in Italy was somehow deficient and should inhibit appointment of class counsel.  Both

---

[12] Declaration of Michael C. Spencer ("Spencer Decl.") at ¶ 4-11.

[13] The Second Circuit holds that "non-lead counsel are entitled to reasonable attorneys' fees for work completed prior to the appointment of a lead plaintiff if such work conferred 'a substantial benefit on the class.'" *See Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emps. Ret. Sys.*, 814 F.3d 652, 655-56 (2d Cir. 2016) (reversing denial of fees to non-lead counsel in class action who "never filed a notice of appearance in the case") (quoting *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 87 (2d Cir. 2010)).  The cases cited by the Republic both deal with appointment of co-lead counsel, which is not at issue here. (ECF 51 at 25).  Duane Morris LLP is the sole lead-counsel in this case, and its appointment as Class Counsel is appropriate.

[14] *See* Costantini Reply Decl. Ex A at 19:3-28:2 (Plaintiff describing his relationships with Michael Spencer and Duane Morris, and Duane Morris agreeing to provide the Republic with the basic elements of its engagement letter with Plaintiff); *see also* Spencer Decl. Ex. A (describing retainer).

Plaintiff and his counsel have acted in good faith to satisfy discovery obligations. The Republic's contention that counsel was required to traveled to Fondi, Italy to provide in-person supervision of Mr. Mazzacone's small collection of responsive documents is unreasonable. *See In re Application of Sarrio S.A.*, No. M 9-372. 1995 WL 598988, at *3 (S.D.N.Y. Oct. 11, 1995) (commenting that "[a] lawyer should be able to provide advice to his client with respect to the potential discoverability of documents without having to travel to where the documents are located") (remanded on other grounds). The document production by one bondholder is limited, and there is no reason to believe it is incomplete. The Republic complains that it received multiple productions from Plaintiff; however, this arose due to the Republic's requests for redundant and/or superfluous documents (for example, multiple emails regarding Mr. Mazzaccone's steps to obtain DTCC authorizations to sue, after the authorizations themselves had been produced). There are no allegations that any of these subsequent productions were particularly relevant or changed the Republic's position. (ECF 51 at 26-27). Duane Morris LLP amply satisfied its discovery obligations and went above and beyond to provide additional documents at the Republic's request.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion for class certification; appoint Plaintiff as class representative; and appoint Duane Morris LLP as Class Counsel.

Dated: New York, New York
　　　　January 9, 2026

                                                  Respectfully submitted,

                                                  DUANE MORRIS LLP

                                                  By:   */s/ Anthony J. Costantini*
                                                             Anthony J. Costantini
                                                             Arti Fotedar
                                                             Stephanie Lamerce
                                                             Jillian M. Dreusike

                                                22 Vanderbilt
                                                335 Madison Avenue, 23rd Floor
                                                New York, NY 10017-4669
                                                Phone: (212) 692-1000
                                                Fax: (212) 692-1020
                                                Email: ajcostantini@duanemorris.com
                                                            afotedar@duanemorris.com
                                                             slamerce@duanemorris.com
                                                             jdreusike@duanemorris.com

                                              *Attorneys for Plaintiff Massimo Mazzaccone*

## **LOCAL RULE 7.1 CERTIFICATION**

      I, Anthony J. Costantini, an attorney duly admitted to practice before this Court, hereby certify that this memorandum of law complies with the word count limit set forth in Local Rule 7.1(c) because it contains 3,983 words, excluding those items excluded by Local Rule 7.1(c). In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: January 9, 2026                                          */s/ Anthony J. Costantini*
                                                                                      Anthony J. Costantini