UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
MASSIMO MAZZACCONE,                     :
                                        :
                    Plaintiff,          :
                                        :    24cv6168 (DLC)
          -v-                           :
                                        :    OPINION AND
THE BOLIVARIAN REPUBLIC OF VENEZUELA,   :         ORDER
                                        :
                    Defendant.          :
                                        :
--------------------------------------- X
APPEARANCES:

For plaintiff Massimo Mazzaccone:

Anthony J. Costantini
Stephanie Lamerce
Jillian M. Dreusike
Harvey W. Gurland, Jr.
Arti Fotedar
Duane Morris LLP
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, New York 10017

For defendant The Bolivarian Republic of Venezuela:

Camilo Cardozo
Dora Paula Georgescu
Marisa Antonelli
Vinson & Elkins LLP
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036

DENISE COTE, District Judge:

      This case concerns the alleged failure of the Bolivarian

Republic of Venezuela ("Venezuela") to make contractually

mandated payments of principal and interest on two series of

sovereign bonds.  Plaintiff Massimo Mazzaccone, a beneficial

owner of the bonds, has moved for class certification, to be appointed as class representative, and for Duane Morris LLP ("Duane Morris") to be appointed as class counsel.  For the following reasons, the motion is granted.

## Background

As detailed in the amended complaint, Venezuela issued two series of 13.625% bonds relevant here: $500 million in bonds issued in 1998 under ISIN No. USP922646AT10 (the "AT10 Bonds"), and $300 million in bonds issued in 2001 under ISIN No. USP9395PAA95 (the "AA95 Bonds").[1]  Both bond series were issued pursuant to Fiscal Agency Agreements signed in 1998 and 2001 respectively (the "FAAs").  Under the bond terms and FAAs, both bonds matured on August 15, 2018, and interest payments are due twice yearly on February 15 and August 15 until the principal is repaid.  The FAAs include waivers of sovereign immunity and provide for enforcement of the bonds in the event of non-payment.

In 2017, Venezuela ceased making payments on much of its public debt.  On February 15, 2018, Venezuela failed to remit

---

[1] In 2004, Venezuela issued an additional $252,811,000 of 13.625% bonds also under ISIN No. USP922646AT10 pursuant to the 1998 FAA, for a total principal amount of $752,811,00.  All bonds issued under ISIN No. USP922646AT10 are collectively the "AT10 Bonds."

scheduled interest payments on the AA95 and AT10 Bonds and, on their August 15 maturity date, failed to repay the principal. No payments on the bonds have been made since.

In January 2023, the Venezuelan National Assembly established the Committee for the Administration and Protection of Assets ("CAPA") to defend Venezuela's assets abroad.  The National Assembly -- elected in 2015 and constituted in opposition to the government of Nicolás Maduro -- was the only representative of the Venezuelan state recognized by the United States at the time.

In August 2023, the National Assembly issued the Tolling Resolution.[2]  That resolution extended the statute of limitations applicable to all bonds issued by Venezuela and related enforcement actions until December 31, 2028.  Pursuant to the Tolling Resolution, CAPA has worked with several creditors to terminate litigation proceedings related to Venezuela's sovereign debt without prejudice to reinstating their claims on or before December 31, 2028.  Absent the Tolling Resolution, the statute of limitations for breach of the AT10 and AA95 Bonds

---

[2] On March 30, 2023, the Maduro government also made a tolling announcement, declaring that it tolled all statute of limitations applicable to several issuances of sovereign bonds, including the AA95 and AT10 Bonds, for five years or until U.S. sanctions are lifted, whichever occurs first.

expired on August 15, 2024, six years after their maturity date. N.Y. C.P.L.R. § 213(2).

Mazzaccone, an Italian investor, is the beneficial owner of $10,000 in principal amount of the AT10 Bonds and $10,000 in principal amount of the AA95 Bonds. Mazzaccone bought the bonds from a holder in Switzerland in August 2024, after Italy prohibited further market purchases of Venezuelan sovereign securities. Mazzaccone purchased the bonds with knowledge that they had been in default since 2018 and after having commenced three lawsuits in connection with prior purchases of Venezuelan bonds. According to his declaration, he acquired the bonds "to expand [his] portfolio, to take advantage of positive developments in the political situation, and to strengthen the legal and investment position of all investors by stopping the running of limitation periods on an issuance-wide basis."

Mazzaccone filed this proposed class action on August 14, 2024, on behalf of beneficial owners of the AT10 and AA95 bonds, alleging breach of contract. He filed an amended complaint on May 5, 2025. Defendant filed an answer on May 19.

On September 19, Mazzaccone moved to certify two classes: (1) all holders of the AA95 Bonds on August 14, 2024, who continue to hold thereafter (the "AA95 Class"); and (2) all holders of the AT10 Bonds on August 14, 2024, who continue to

hold thereafter (the "AT10 Class").  The motion also seeks appointment of Mazzaccone as class representative and Duane Morris, Mazzaccone's counsel, as class counsel.  Mazzaccone attached to his motion declarations from himself; Anthony J. Costantini, a partner at Duane Morris; and Hector Hernandez, an attorney with expertise in Venezuelan law; and many exhibits.

Defendant filed an opposition on November 27, 2025. Defendant attached to its opposition declarations from Camila Cardozo, defendant's counsel; Gustavo Marcano, a CAPA coordinator; and Vicente Gonzalez de la Vega, another attorney with expertise in Venezuelan law; and many exhibits.

Mazzaccone filed a reply on January 9, 2026.  He attached to his reply declarations from William W. Wickersham, a senior claims administrator; Michael C. Spencer, Mazzaccone's co-counsel not affiliated with Duane Morris; and Anthony J. Costantini; and additional exhibits.

## Discussion

Defendant has opposed plaintiff's motion to certify a class.  It contends that plaintiff's motion does not satisfy the Rule 23 standards and that Duane Morris cannot serve as class counsel.  These arguments fail.

I.   Class Certification

To qualify for class certification, plaintiff must prove
that the proposed class action satisfies the four elements of
Rule 23(a): numerosity, commonality, typicality, and adequacy of
representation.  Fed. R. Civ. P. 23(a).  In addition, plaintiff
must show that the proposed class action can proceed under one
of the categories of Rule 23(b).  Here, Mazzaccone seeks
certification of the class under Rule 23(b)(3).  Thus, he must
show that common questions of law or fact predominate, that a
class action is the superior method for adjudicating the claims,
and that the proposed class is sufficiently ascertainable.  Fed.
R. Civ. P. 23(b)(3); In re Petrobras Sec., 862 F.3d 250, 260 (2d
Cir. 2017).

A party seeking to certify a class "must affirmatively
demonstrate his compliance with" the requirements of Rule 23.
Elisa W. v. City of New York, 82 F.4th 115, 127 (2d Cir. 2023)
(citation omitted).  The district court must "make a definitive
assessment of Rule 23 requirements, notwithstanding their
overlap with merits issues, must resolve material factual
disputes relevant to each Rule 23 requirement, and must find
that each requirement is established by at least a preponderance
of the evidence."  In re U.S. Foodservice Inc. Pricing Litig.,
729 F.3d 108, 117 (2d Cir. 2013) (citation omitted).  Stated

differently, "the district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 251 (2d Cir. 2011) (citation omitted).

A.    Rule 23(a)

Mazzaccone has satisfied Rule 23(a)'s requirements.  Given the aggregate value of the bonds at issue and the existence of multiple related individual actions, the proposed classes are sufficiently numerous, a point defendant does not dispute. Commonality is likewise satisfied because liability turns on uniform bond terms and FAAs, and the same history of Venezuela's alleged nonpayment, presenting questions of law and fact common to all class members.  Mazzaccone's claims are also typical of those of the proposed classes, as he is a beneficial owner of the bonds subject to the same contractual provisions and advancing the same breach-of-contract theory.  Finally, although his acquisition of the bonds occurred under unique circumstances, Mazzaccone's interest in enforcing the bonds and obtaining repayment is fully aligned with that of the proposed classes, rendering him an adequate representative.

Defendant argues that Mazzaccone is not a typical or adequate class representative because he is subject to a

champerty defense under New York law.  "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  <u>Brown v. Kelly</u>, 609 F.3d 467, 480 (2d Cir. 2010) (citation omitted).

New York's prohibition on champerty is codified at New York Judiciary Law § 489(1), which provides in relevant part:

> <u>No person or co-partnership</u>, <u>engaged directly or</u>
> <u>indirectly in the business of collection and</u>
> <u>adjustment of claims</u>, and no corporation or
> association . . . shall solicit, buy or take an
> assignment of . . . a bond, promissory note, bill of
> exchange, book debt, or other thing in action . . .
> <u>with the intent and for the purpose of bringing an</u>
> <u>action or proceeding thereon</u> . . ..

(Emphasis added.)  Because Mazzaccone admits to acquiring the bonds with the intent to bring this action, defendant argues his acquisition is void and he lacks standing to sue.  The text and purpose of the champerty statute make clear, however, that it only applies to individuals "engaged directly or indirectly in the business of collection and adjustment of claims."  N.Y. Jud. Law § 489(1); <u>see also</u> <u>Tr. For the Certificate Holders of</u> <u>Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.</u>, 918 N.E.2d 889, 893 (N.Y. 2009) (explaining that champerty laws target the "commercialization of or trading in litigation" (citation omitted)).  Although Mazzaccone has commenced three other lawsuits involving Venezuelan bonds, defendant does not

argue, nor does the record establish, that Mazzaccone is engaged directly or indirectly in the business of collecting claims. Thus, the champerty defense is inapplicable to Mazzaccone's bond purchases, and does not render him atypical or inadequate as a class representative.[3]

B.    Rule 23(b)(3)

Rule 23(b)(3) is likewise satisfied.  Predominance hinges on whether elements of the claims can be proven through "generalized proof," and whether those common issues "are more substantial than the issues subject only to individualized proof."  Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 512 (2d Cir. 2020) (citation omitted).  That standard is met here because defendant's liability to all class members turns on the same bonds, FAAs, and alleged course of nonpayment.  See Seijas v. Rep. of Argentina, 606 F.3d 53, 57 (2d Cir. 2010) (affirming predominance where the issue "common among the classes' members [was] liability stemming from [a sovereign's] default").

---

[3] The New York Court of Appeals has explained that the state's champerty statute is "limited in scope and largely directed toward preventing attorneys from filing suit merely as a vehicle for obtaining costs."  Love Funding Corp., 918 N.E.2d at 894 (citation omitted).  Defendant does not argue that Mazzaccone's attorneys are "indirectly engaged in the business of collection."  N.Y. Jud. Law § 489(1).

Defendant contends that predominance is defeated by individualized issues, including compliance with Office of Foreign Assets Control ("OFAC") sanctions, identification of the bonds' beneficial owners, damages calculations, and affirmative defenses. Those issues, however, do not predominate over the common question of liability arising from Venezuela's alleged default. Id.

Nor do they present significant manageability concerns. Any sanctions-related issue can be addressed at the settlement or distribution stage by cross-referencing class members against OFAC's publicly available sanctions lists. Beneficial owners can be identified and notified through established clearing systems, including the Depository Trust & Clearing Corporation ("DTCC") infrastructure previously used to effectuate interest payments. And "the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." Id. at 58. That is particularly true here where damages -- consisting of unpaid principal plus accrued interest under fixed contractual terms -- are straightforward to calculate.

A class action is also the superior method for adjudicating these claims. Class treatment avoids duplicative litigation and permits the efficient and consistent resolution of identical

breach-of-contract claims arising from the same sovereign default.  Id.; In re U.S. Foodservice, 729 F.3d at 130.  The class action device also allows class members with small claims to proceed when the cost of individual litigation is prohibitive.  Seijas, 606 F.3d at 58.

Defendant argues that individual actions are preferable because some bondholders have pursued separate litigation using differing strategies.  But the existence of parallel individual actions does not undermine superiority, as Rule 23(b)(3)'s opt-out mechanism preserves the autonomy of those litigants.[4]

Lastly, the proposed classes are sufficiently ascertainable.  "Ascertainability requires only that a proposed class is defined using objective criteria that establish a membership with definite boundaries."  Fikes Wholesale, Inc. v. HSBC Bank USA, N.A., 62 F.4th 704, 716 (2d Cir. 2023) (citation omitted).  Both classes proposed here are defined by objective criteria: beneficial ownership of the bonds maintained continuously from the date of filing.  This continuous-holder requirement -- expressly approved by the Second Circuit in another sovereign debt class action -- ensures class members are easily identified despite secondary market trading.  Puricelli

---

[4] The parties' disagreement on the scope and reliability of the Tolling Resolution is irrelevant to whether a class action is the superior method of adjudication of these claims.

v. Republic of Argentina, 797 F.3d 213, 215-16 (2d Cir. 2015).

Mazzaccone has thus met the requirements of Rules 23(a) and

23(b)(3).

II.  Appointment of Class Counsel

Pursuant to Rule 23(g), Fed. R. Civ. P., a court that

certifies a class must appoint class counsel.  In appointing

class counsel, a court must consider:

> (i) the work counsel has done in identifying or
> investigating potential claims in the action; (ii)
> counsel's experience in handling class actions, other
> complex litigation, and the types of claims asserted
> in the action; (iii) counsel's knowledge of the
> applicable law; and (iv) the resources that counsel
> will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  The court may also consider "any

other matter pertinent to counsel's ability to fairly and

adequately represent the interests of the class."  Fed. R. Civ.

P. 23(g)(1)(B).

Mazzaccone requests that Duane Morris be appointed as class

counsel.  According to his declaration, Mazzaccone initially

retained two non-Duane Morris attorneys -- Patricia Rosita Vago

and Michael C. Spencer -- when he first considered bringing

enforcement actions on defaulted Venezuelan debt.  Once

Mazzaccone decided to commence litigation, Spencer referred

Mazzaccone to Duane Morris, who Mazzaccone also retained.  Duane

Morris is experienced in both class action and sovereign bond

enforcement cases, having previously represented numerous plaintiffs in the Argentinian bond litigation.

Only Duane Morris attorneys have entered appearances on Mazzaccone's behalf in this action, and Mazzaccone has not sought the court's approval of a fee-sharing, co-counsel relationship.  Defendant's opposition revealed to the Court for the first time that the engagement letter Mazzaccone signed indicates that Spencer, Vago, and Duane Morris have assumed "joint responsibility" for this case and "shall share any fee award" on terms approved by Mazzaccone.  Pursuant to that agreement, Vago and Spencer have remained actively involved in the litigation.  Defendant argues that Mazzaccone's failure to disclose this fee-sharing, co-counsel arrangement to the Court is disqualifying.[5]

Plaintiff's omission is both disappointing and concerning. In appointing class counsel, a court must assess whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (citation omitted). Lawyers who file appearances in a litigation assume "the

---

[5] Defendant also argues that Duane Morris has failed to effectively oversee Mazzaccone's document review and production. Any good faith dispute regarding discovery will be managed through the Court's ordinary procedures for raising discovery disputes.  None has been raised to date.

13

obligations of truth, candor, accuracy, and professional judgment expected of them as officers of the court." Oliveri v. Thompson, 803 F.2d 1265, 1267 (2d Cir. 1986); see also 22 NYCRR § 1200.3.3 cmt. 2 (noting "the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process").

The fact that Duane Morris relies on lawyers outside of the firm to represent the class is relevant to a court's assessment of the firm's ability to handle the litigation and the court's ability to supervise the litigation. The involvement of lawyers from multiple firms also tends to inflate legal fees to the detriment of class members. Consequently, the Second Circuit has encouraged all attorneys to file notices of appearance "to keep a district court apprised of which counsel are contributing to the litigation of a class action suit, which in turn facilitates the court as serving as a guardian of class rights." Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emps. Ret. Sys., 814 F.3d 652, 659 (2d Cir. 2016) (citation omitted).

Despite its lack of candor regarding its relationship with co-counsel and their fee arrangement, Duane Morris will not be disqualified. Duane Morris has the requisite experience and expertise to serve as class counsel. It appears as well that Vago and Spencer's contributions enhance the quality of

14

representation provided in this case.  Under these circumstances, Duane Morris may share fees with Vago and Spencer, so long as the arrangement does not "reduce class recovery at all."  Id. at 660.

### Conclusion

Plaintiff's September 19, 2025 motion for class certification is granted.  Plaintiff is appointed as class representative, and Duane Morris is appointed as class counsel.

Dated:    New York, New York
          February 17, 2026

_____
DENISE COTE
United States District Judge
